1  Ronald J. Logar --State Bar No. 303
   Eric Pulver--State Bar No. 7874
2  LAW OFFICE OF LOGAR & PULVER, PC
   225 S. Arlington Ave., Ste. A
3  Reno , NV  89501
   Tel:    775-786-5040
4  Fax:    775-786-7544

5  Attorneys for Dennis Montgomery, Brenda Montgomery, and the Montgomery Family Trust

6
                          **UNITED STATES DISTRICT COURT**
7
                           **DISTRICT OF NEVADA - RENO**
8

9  FRIENDLY CAPITAL PARTNERS, L.P., a     ) Case No. 3:06-CV-00250-BES-VPC
   California Limited Partnership,          )
10                                          )
                Plaintiff,                  )       Related to 00056-PMP-VPC
11                                          )       BASE FILE; & 3:06-CV-00145-PMP-VPC
   vs.                                      )
12                                          )
   DENNIS MONTGOMERY, BRENDA                )
13 MONTGOMERY, and the MONTGOMERY           )
   FAMILY TRUST, a California trust, and    ) **ANSWER AND COUNTERCLAIM OF**
14 DOES 1 through 10, individually.         ) **DENNIS MONTGOMERY, BRENDA**
                                            ) **MONTGOMERY, AND THE**
15              Defendants                  ) **MONTGOMERY FAMILY TRUST**
                                            )
16 _____  )
                                            )
17                                          )
   DENNIS   MONTGOMERY,   BRENDA)
18 MONTGOMERY, and the MONTGOMERY)
   FAMILY TRUST,                            )
19                                          ) **DEMAND FOR A JURY TRIAL**
                Counterclaimants,           )
20                                          )
   vs.                                      )
21                                          )
   FRIENDLY CAPITAL PARTNERS, L.P., a       )
22 California Limited Partnership; WARREN    )
   TREPP, an individual, ETREPPID           )
23 TECHNOLOGIES, LLC, a Nevada Limited      )
   Liability Company, DOUGLAS J. FRYE, an   )
24 individual, and DOES 1 - 10 inclusive.   )
                                            )
25              Counterdefendants.          )
   _____  )
26                                          )
   AND ALL RELATED MATTERS.                 )
27 _____  )
                                            )
28

## ANSWER

Defendants Dennis Montgomery, Brenda Montgomery, and the Montgomery Family Trust, (hereinafter "Defendants") answer the Complaint as follows:

### PARTIES

1.  Defendants lack information or belief sufficient to enable them to admit or deny the allegations of this Paragraph.

2.  Defendants deny the allegations of this Paragraph.

3.  Defendants deny the allegations of this Paragraph.

### GENERAL ALLEGATIONS

4.  Defendants deny the allegations of this Paragraph.

5.  Defendants lack information or belief sufficient to enable them to admit or deny the allegations of this Paragraph.

6.  Defendants lack information or belief sufficient to enable them to admit or deny the allegations of this Paragraph.

7.  Defendants lack information or belief sufficient to enable them to admit or deny the allegations of this Paragraph, except that Defendants deny the truth of the contents of Exhibit D7.

8.  Defendants deny the allegations of this Paragraph.

9.  Defendants lack information or belief sufficient to enable them to admit or deny the allegations of this Paragraph, except that Defendants deny the truth of the contents of Exhibits F and G.

10. Defendants deny the allegations of this Paragraph.

11. Defendants deny the allegations of this Paragraph.

12. Defendants deny the allegations of this Paragraph.

### FIRST CLAIM FOR RELIEF

(Foreclosure of Security - NRS 104.9601 et seq.)

13. Defendants reallege their answer to Paragraphs 1 through 12 as though fully set forth herein.

1

14. Defendants deny the allegations of this Paragraph.

15. Defendants deny the allegations of this Paragraph

16. Defendants lack information or belief sufficient to enable them to admit or deny the allegations of this Paragraph, especially regarding the status of the collateral company, and the remaining allegations are a conclusion of law.

17. Defendants deny the allegations of this Paragraph.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

18. Defendants reallege their answer to Paragraphs 1 through 17 as though fully set forth herein.

19. Defendants deny the allegations of this Paragraph.

20. Defendants deny the allegations of this Paragraph.

21. Defendants deny the allegations of this Paragraph.

22. Defendants deny the allegations of this Paragraph.

23. Defendants deny the allegations of this Paragraph.

## THIRD CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

24. Defendants reallege their answer to Paragraphs 1 through 23 as though fully set forth herein.

25. Defendants deny the allegations of this Paragraph.

26. Defendants deny the allegations of this Paragraph.

27. Defendants deny the allegations of this Paragraph.

28. Defendants deny the allegations of this Paragraph.

29. Defendants deny the allegations of this Paragraph.

30. Defendants deny the allegations of this Paragraph.

31. Defendants deny the allegations of this Paragraph.

32. Defendants deny the allegations of this Paragraph.

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment)

33.     Defendants reallege their answer to Paragraphs 1 through 32 as though fully set forth herein.

34.     Defendants deny the allegations of this Paragraph.

35.     Defendants deny the allegations of this Paragraph.

36.     Defendants deny the allegations of this Paragraph.

## **AFFIRMATIVE DEFENSES**

### FIRST AFFIRMATIVE DEFENSE

The Complaint and the purported claims for relief alleged therein fail to state facts sufficient to constitute a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery by its, and its agents, own fraudulent conduct and misrepresentations, including but not limited to recession of the alleged notes by fraud, misrepresentations and or mistake.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff is barred from recovering under the Complaint by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff is estopped by virtue of its, and its agents, including Warren Trepp and Douglas Frye's words and conduct from asserting the claims as set forth in the complaint.

### FIFTH AFFIRMATIVE DEFENSE

The loss, if any, sustained by Plaintiff was proximately caused and contributed to by the negligence, fraud, improper conduct, breach of contract or intervening acts of Plaintiff and or its agents, including Trepp and Frye.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff failed to comply with conditions precedent. In particular, in consideration for the

Answer and Counterclaim

1   Montgomerys' contribution of valuable technology contained on CD No. 1, which is all that they

2   contributed to eTreppid, and therefore Trepp and FCP agreed to give the Montgomerys 50% of

3   eTreppid and not dilute their share, which they violated.

SEVENTH AFFIRMATIVE DEFENSE

5   There was a lack of consideration and a failure of consideration for the notes alleged in the

6   Complaint.

EIGHTH AFFIRMATIVE DEFENSE

8   The alleged note(s) are null and void by fraud in the inception; or null and void

9   because of the fraud of the plaintiff and its agents.  Alternately, the alleged note(s) are null and

10   void by uncertainty or lack of mutuality of obligations.

NINTH AFFIRMATIVE DEFENSE

12   Plaintiff is barred from any recovery by virtue of its and its agents' breach of fiduciary

13   duties, and is barred by the Business Judgment Rule.

TENTH AFFIRMATIVE DEFENSE

15   Plaintiff's damages as alleged in the Complaint, if any such damages were sustained, are

16   the result of plaintiff and its agents' failure to exercise reasonable care and caution.

ELEVENTH AFFIRMATIVE DEFENSE

18   Plaintiff's recovery under the Complaint, if any, is subject to set-off and/or recoupment in

19   the amounts owed by plaintiff to defendants.

TWELFTH AFFIRMATIVE DEFENSE

21   Plaintiff has failed in its duty to mitigate and minimize damages, if any.

THIRTEENTH AFFIRMATIVE DEFENSE

23   Plaintiff lacks standing to maintain this action.

FOURTEENTH AFFIRMATIVE DEFENSE

25   Plaintiff has breached his covenant of good faith and fair dealing and is therefore barred

26   from recovering any amounts.

FIFTEENTH AFFIRMATIVE DEFENSE

28   Plaintiff's recovery is barred by the doctrines of res judicata and collateral estoppel.

4

Answer and Counterclaim

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff freely and voluntarily assumed the risk of injury and damage alleged in the Complaint with full knowledge and appreciation of its magnitude, and that this assumption of the risk was the proximate cause of the alleged damage, if any, sustained by plaintiff. Therefore, plaintiff is barred from recovering any damages, if any were in fact sustained.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff has delayed unreasonably in asserting the claims set forth in the Complaint, and the claims are thus barred by the doctrine of laches.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Defendant asserts all defenses available to a trust and under the Probate Code.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff has waived the underlying claims set forth in the Complaint and/or has acquiesced to the alleged actions giving rise to the alleged claims.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff has no legal writings to enforce its alleged notes.

## ALL AFFIRMATIVE DEFENSES RESERVED

Defendants reserve their rights to assert each and every affirmative defense that might be appropriate and available, and failure to specifically allege any such affirmative defense in this answer is not intended as a waiver or abandonment.

WHEREFORE, Defendants pray for judgment as follows:

1.      Judgment be entered in favor of Defendants;

2.      Plaintiffs take nothing by reason of the Complaint;

3.      Defendants be awarded attorneys' fees and costs;

4.      Such further and other relief as the Court may deem just and appropriate.

## COUNTERCLAIM OF DENNIS MONTGOMERY, BRENDA MONTGOMERY, AND THE MONTGOMERY FAMILY TRUST

Counterclaimants Dennis Montgomery, Brenda Montgomery and the Montgomery Family

Trust, (hereinafter "Counterclaimants") hereby allege against Counterdefendants Friendly Capital Partners, L.P., eTreppid Technologies, LLC, (formerly called Intrepid Technologies, LLC), Warren Trepp, Douglas Frye, and Does 1 - 10 inclusive, the below Claims for Relief.

## **INTRODUCTION**

1.  Friendly Capital Partners LP ("FCP") was formed in 1993.  FCP is the alter ego of Warren Trepp and Douglas Frye.  FCP's initial general partner was Trepp, who was the chief trader for Michael Milken during the largest junk bond scandal in U.S. history.  California attorney Frye assisted Trepp in forming FCP and other business entities controlled by Trepp and Frye.  Defendant, eTreppid Technologies, LLC., is a Nevada Limited Liability Company, the managing member of which is Defendant, Warren Trepp, and is the alter ego of Counter Defendants, Warren Trepp, Douglas J. Frye and Friendly Capital Partners, L.P.

2.  These counterclaims arise out of the fraud, misrepresentations, and deceit Trepp employed to unlawfully take financial advantage of many, including Crosscomplainants.  The Complaint brought by Trepp alter ego FCP is another example of Trepp's misconduct.  FCP is one of many diversion companies owned by Trepp controlled by Trepp and Frye. These other diversion companies include Fremont Trusts, Friendly Capital, 755 Trademark Drive, Total Finance and Leasing, Ascentia Capital.

3. Trepp's FCP and other diversion companies were formed to enable Trepp to deceitfully channel money to Trepp thereby diluting Mr. Montgomery's share of eTreppid and steal Mr. Montgomery's money - all in breach of Trepp's fiduciary duty to eTreppid stockholder Dennis Montgomery.

4.  FCP's Complaint, alleging amounts due under certain alleged promissory notes, is without merit.  For example, the amounts due under the January 14, 1999 promissory note and by the first modification of December 21, 2000 have been repaid in full.  And the alleged second modification dated December 28, 2005 along with the Guaranty dated the next day were not agreed to nor executed by Dennis Montgomery - they are forgeries.  Additionally, January 14, 1999 note and its December 21, 2000 modification were breaches of eTreppid, Trepp, and Frye's agreements

6

Answer and Counterclaim

1  with and fiduciary duties to Montgomery.

2      5.  FCP's Complaint is nothing more than an unlawful retaliation by Trepp and Frye for
3  other pending litigation regarding the ownership of extremely valuable copyrighted computer
4  software that Dennis Montgomery developed.  eTreppid, Trepp, and Frye are  attempting to obtain
5  Montgomery's intellectual property in order to fulfill certain United State Government defense
6  contracts.  eTreppid and Trepp obtained these contracts with the assistance of former United States
7  Congressman and current Nevada Governor James Gibbons, after showering Gibbons with reported
8  and unreported campaign contributions, currently the subject of a criminal investigation by the
9  Public Integrity Division of the Depart of Justice in Washington, D.C.   In the pending civil
10 litigation between Trepp and Dennis Montgomery, Montgomery claims the majority shareholder of
11 eTreppid, Trepp, used his majority position to squeeze out, dilute, and misappropriate vast sums of
12 money from shareholder Dennis Montgomery.  Mr. Montgomery also claimed, and the court agreed,
13 Trepp attempted to convert Mr. Montgomery's technology by lying to a Reno FBI agent.  This FBI
14 agent acted as Trepp's "agent" and "unwitting pawn" who then raided Dennis Montgomery's home
15 and storage units in "callous disregard" of Mr. Montgomery's constitutional rights.  In a scathing
16 opinion against the FBI, and Trepp indirectly, the court found the FBI raids to be unconstitutional.
17 (Order, Nov. 28, 2006, docket #130, cv:06-263, U.S. Dist. Ct., Reno).  FCP's current complaint
18 against Mr. Montgomery is nothing more than Trepp's retaliation for Mr. Montgomery exposing
19 Trepp's manipulation and deceit.  Such actions have been reported in virtually every major
20 newspaper in Nevada and across the country.

21
22                                      **PARTIES**

23      6.  Counterclaimant Dennis Montgomery is an individual who resides in the State of
24 Washington, and is a computer scientist and the inventor and owner of valuable technology that
25 spawned this action. He is also the co-trustee of the Montgomery Family Trust (the "Trust").

26      7.  Counterclaimant Brenda Montgomery is the wife of Dennis Montgomery and also resides
27 in the State of Washington, and is the co-trustee of the Montgomery Family Trust.

28      8.  The Trust is a citizen of the State of Washington, and is the owner of the copyrights

                                         7
                                                        Answer and Counterclaim

1  discussed above.

2       9.  Counterdefendant Friendly Capital Partners, L.P., is, upon information and belief, a

3  California limited partnership.

4       10.  Counterdefendant Trepp is, upon information and belief, an individual who resides in

5  Washoe County, Nevada and is the majority shareholder in eTreppid Technologies, and the manager

6  and agent of Friendly Capital Parners, L.P.

7       11.  Counterdefendant eTreppid Technologies, LLC is, upon information and belief a

8  Nevada limited liability company, with its usual place of business in Washoe County, Nevada.

9       12.  Counterdefendant Frye is, upon information and belief, an individual residing in

10  California and a member of the State Bar of California.  Frye has been Trepp's lawyer since Trepp's

11  days as Michael Milken's chief trader.   Frye is the attorney for eTreppid Technologies and Friendly

12  Capital Partners and, upon information and belief, is an owner of an interest in these two

13  companies.  Counterclaimants are informed and believe Frye drafted most of the documents

14  attached as exhibits to FCP's Complaint.   Upon information and belief, Frye is the agent for service

15  of process, and agent and partner for Friendly Capital Partners, L.P.  Doug Frye is a California

16  resident.

17       13.  Upon information and belief, Counterdefendants Sue Perez is a Nevada resident.

18       14.  Counterclaimants are unaware of the true names and capacities of Counterdefendants

19  sued herein as DOES 1 through 10, inclusive, and therefore sue said Counterdefendants under such

20  fictitious names. Counterclaimants are informed and believe that such fictitious Counterdefendants

21  are responsible in some manner for the events and happenings herein referred to, and proximately

22  caused the damage to Counterclaimants as herein alleged.  Counterclaimants will seek leave to

23  amend this counterclaim to allege their true names and capacities when the same have been

24  ascertained.

25

26                    **JURISDICTION AND VENUE**

27       15.  The Court has jurisdiction pursuant to 28 U.S.C. §1332 (diversity) and over the state

28  law claims pursuant to 28 U.S.C. §1367 (supplemental jurisdiction).  Venue is proper pursuant to 28

Answer and Counterclaim

1  U.S.C. §1441(b).

2

3                          **FACTUAL ALLEGATIONS**

4        16. Dennis Montgomery is a computer scientist, inventor, and software developer.  In or

5  around 1982, Mr. Montgomery developed certain pattern recognition software, which he

6  copyrighted at the U.S. Copyright Office.  After the registration of these copyrights, Mr.

7  Montgomery developed derivative works based on the pattern recognition technology originally

8  copyrighted between 1982 and January 1987 (the "Derivative Works").  Those uniquely important

9  Derivative Works were fully developed prior to 1998 and are the exclusive property of the Trust.

10       17. In or around September 1998, Mr. Montgomery and Counterdefendant Trepp, formed

11 Counterdefendant eTreppid.  Pursuant to the "Contribution Agreement" dated September 28, 1998

12 between Mr. Montgomery and Brenda Montgomery as co-trustees of the Montgomery Family Trust,

13 and Dennis Montgomery, an individual, on one hand, and Trepp as the Chairman of Intrepid

14 Technologies, LLC, on the other hand, Mr. Montgomery received an "interest in eTtreppid equal to

15 a fifty percent (50%) percentage of interest."

16       18. Pursuant to the "Contribution Agreement" dated September 28, 1998, between Trepp,

17 Dennis Montgomery and the Trust, in exchange for a fifty-percent interest in eTtreppid set aside to

18 Montgomery, the Trust contributed specific technology to Intrepid that is identified in paragraph

19 1.2.1 of the Contribution Agreement, which is the "the software compression technology contained

20 on that certain Software Compression Engine Development Program contained on CD No. 1."

21       19. The formation documents were drafted by attorney Frye.

22       20.  Trepp agreed to put capital into the company, but never did fulfill his part of the

23 agreements, and refused to produce the books of the company.

24       21.  Significantly, because the Trust owned other technology, Paragraph 1.3 of the

25 Contribution Agreement provides the Trust is expressly not "contributing, transferring or

26 conveying to Intrepid under this agreement or by any other means, nor is Intrepid acquiring from

27 [the Trust] any other tangible and intangible assets of" the Trust or Montgomery.

28       22.  Thus, pursuant to the express terms of the Contribution Agreement, eTtreppid only

                                          9
                                                          Answer and Counterclaim

1  acquired the software compression technology contained on CD No. 1 and nothing else, which is

2  also what the Nevada U.S. District Court has ruled. (Order, Nov. 28, 2006, docket #130, cv:06-263,

3  U.S. District Court, Nevada-Reno).

4       23. After Mr. Montgomery formed this partnership, Trepp, and attorney Frye made

5  representations to Mr. Montgomery regarding the financial condition of eTreppid to induce

6  Montgomery to sign the promissory note dated January 14, 1999 and the first modification, dated

7  December 21, 2000. Both documents are attached as exhibits to FCP's Complaint. Unbeknownst

8  to Mr. Montgomery, Trepp and Frye's representations were false and misleading, constituted

9  fraudulent conduct, were in breach of the Contribution Agreement, and were in breach of Trepp and

10  Frye's fiduciary duties to Mr. Montgomery.

11       24. Based upon Trepp and Frye's representations, and in reliance thereon, Mr. Montgomery

12  signed the January 14, 1999 promissory note and the December 21, 2000 modification agreement.

13  Unbeknownst to Mr. Montgomery, those documents  were then used by Trepp and Frye to begin

14  dilution of Mr. Montgomery's ownership interest in eTreppid.  Trepp's majority interest was then

15  used by Trepp to obtain favorable financial treatment for himself as a majority shareholder at the

16  expense of Mr. Montgomery.

17       25. For example, Trepp washed all of this private expenses, including private jet flights for

18  he and his wife, through eTreppid.  Attorney Frye also benefitted from his misrepresentations

19  because he would dishonestly triple bill eTreppid, which also diluted Mr. Montgomery's share of

20  the company.

21       26. Trepp has employed illegal aliens for his home and business for approximately the last

22  ten years.  These employees, Alex and Roxanne, have been paid their salaries and living expenses,

23  in cash taken from the eTreppid and other Trepp-related business entities, thereby defrauding

24  eTreppid's investors and the IRS.  Frye, along with some U.S. government officials, have obtained

25  illegal travel documents for these employees.  Trepp's personal relationship with federal and state

26  officials has allowed this kind of illegal activity to continue.

27       27. Trepp required Dennis Montgomery to sell eTreppid stock to Trepp's friends, and then

28  Trepp required Mr. Montgomery to give a major portion of the proceeds from those sales back to

1  Trepp.  Additionally, Mr. Montgomery in informed and believes that Trepp gave to his friend and
2  attorney, Frye, a significant portion of Mr. Montgomery's member share interest in eTreppid
3  Technologies, LLC.

4      28.  FCP agreed to hire Mr. Montgomery in 2001 to build a predictive stock market analysis
5  system.  Trepp agreed to pay Montgomery $10 million for the system if it was able to meet certain
6  goals.  Montgomery met those goals in late 2005.

7      29. Dennis Montgomery created stock trading charts in 2003, 2004, and 2005.   In late 2005,
8  Trepp told Montgomery to alter 2003, 2004, and 2005 stock trading charts to reflect results on
9  specific days, other than the results that were actually produced.  Trepp told Montgomery that Trepp
10  and others had made "trades" in oil and airline stocks on those days.   Trepp was looking to
11  backdate these charts to stock trades he had made on certain dates.

12      30. Montgomery believes that Trepp had been making specific stock trades in the stock
13  market based on intelligence information Trepp was obtaining while under contract to various
14  government agencies.  Trepp was using that information to make stock trades through various
15  friends and "brokerage" houses.  In mid 2005, Trepp told Montgomery that Trepp was going to buy
16  a small brokerage house, which Trepp could control.  Trepp told Montgomery Millennium Capital
17  in New York was under SEC investigations, and Trepp could not make these special trades
18  anymore.  Trepp decided to buy Ascentia Capital in Reno, Nevada in 2005, and asked Frye to find a
19  way to buy controlling interest without having to disclose Trepp's interest in this firm.

20      31.  In mid 2005, Trepp transferred millions of dollars out of eTreppid into FCP, and later
21  into Ascentia Capital for the purpose of making these special trades based upon intelligence
22  information Trepp obtained while under contract to various government agencies.  Trepp opened at
23  least four trading accounts at Ascentia Capital for the propose of trading stocks in early 2006.
24  Trepp asked Mr. Montgomery to sign the signature cards for these accounts, and Montgomery
25  refused.  Mr. Montgomery notified the U.S. Government of his concerns regarding Trepp's stock
26  trades in January 2006.  To this date, no one from the U.S. Government has asked anything of
27  Montgomery regarding Trepp's stock trading activities.  Trepp told Montgomery that Trepp was
28  going to create a new limited liability company that had a chemical name and open bank accounts in

1  Zurich to facilitate these trades.  Montgomery is informed and believes that Trepp transferred

2  significant sums of money to an account in Zurich, from the assets of eTreppid and perhaps Friendly

3  Capital as well.

4       32.  As agents of their alter ego companies, FCP and eTreppid, Trepp and Frye

5  misrepresented the financial condition of eTreppid as being stable and profitable, however denying

6  Montgomery any financial records of the company to confirm that fact.  Trepp and Frye also

7  withheld important information from Mr. Montgomery in order to get him to sign two notes.  That

8  information included the improper transfer of funds out of eTreppid to themselves and to other

9  entities.  Furthermore, Frye had a conflict of interest because he represented Trepp and FCP when

10  Frye approached Mr. Montgomery with signature pages for some, but not all, of the notes, and

11  advised Montgomery to sign these signature pages without access to the documents as a whole.

12       33.  Mr. Montgomery paid these two notes in full, because he did not know at the time that

13  Trepp and Frye had misrepresented to him the financial state of eTreppid, committed fraud, were in

14  the process of breaching the Contribution Agreement, and breached their fiduciary duties.

15       34.  In or around 2003, eTreppid began sublicensing the Derivative Works of Montgomery's

16  intellectual property to various entities, including the United States Government and collecting

17  licensing fees for the sublicenses.  eTreppid was never granted a license to the Derivative Works by

18  Montgomery, or pay any compensation to Mr. Montgomery for the use of Montgomery's

19  intellectual property.  While Trepp repeatedly promised to pay compensation to Montgomery for the

20  used of his property, Trepp ultimately refused to do so.

21       35.  At no time did any of the counterdefendants have a written license to use or exploit the

22  Montgomery Trust's derivative works as required by 17 U.S.C. § 204(a).  As a result, at best,

23  eTreppid only can claim (if anything) an oral, non-exclusive license to use the derivative works.

24  And although the Trust denies it granted any oral nonexclusive license to eTreppid, any such oral

25  license was terminated by the Trust on January 19, 2006, orally and by letter dated January 25,

26  2006.

27       36.  When eTreppid failed and refused to cease exploitation of the derivative works and

28  refusal to account for any income obtained as a result of its unlicensed exploitation of the

1  Derivative works, Mr. Montgomery commenced an action against Trepp and eTreppid, with

2  counterclaims against Montgomery.

3       37.  FCP, an alter ego of Trepp and Frye, then filed its Complaint against  Montgomery on

4  April 23, 2007, alleging foreclosure, beach of contract, breach of the implied covenant of good faith

5  and fair dealing, and unjust enrichment.

6       38. FCP's actions, through its agents Trepp and Frye, in forging Dennis Montgomery's

7  signatures on the December 28, 2005 second modification and Guaranty agreement, thereby

8  fraudulently diluted Mr. Montgomery's interest in eTreppid by deceitful and fraudulent means.  The

9  alleged witness to this document is "Altan M. Bora."  Mr. Bora is Trepp's brother-in-law, who has a

10  felony conviction of insurance fraud and was accused of forging insurance documents.

11  Approximately ten other people were in eTreppid's office that same day and any one of those

12  individuals, many with U.S. Government security clearance, could have signed that document, but

13  did not

14       39.  Because of the aforementioned bad faith of Trepp and Frey acting as agents of FCP, Mr.

15  Montgomery is entitled to pierce the corporate veil of FCP and other Trepp-related business entities.

16

17                          **FIRST CLAIM FOR RELIEF**

18              **(Fraud And Misrepresentation Against All Counterdefendants)**

19       40. Counterclaimants reallage the allegations contained in the foregoing paragraphs as

20  though fully set forth herein.

21       41. In or around 1999, Dennis Montgomery entered into a partnership with Intrepid, the

22  predecessor to eTreppid, and Trepp.

23       42.  During the course of that partnership with eTreppid, FCP, Trepp and Frye orally and in

24  writing misrepresented and fraudulently represented the financial condition of eTreppid in order to

25  induce and deceive Mr. Montgomery to sign two notes, which Mr. Montgomery believes are the

26  notes referenced in FCP complaint and are dated January 14, 1999 and December 21, 2000.

27  Because Mr. Montgomery did not know FCP, Trepp, and Frye were misrepresenting and

28  fraudulently representing the financial condition of the company and other matters, he paid off those

Answer and Counterclaim

1  notes.

2      43. Trepp, Frye, and eTreppid represented in the Contribution Agreement and verbally at the

3  time in Sept of 1998 that only the technology on "CD No. 1" was being conveyed.  However, they

4  lied then and again recently by admitting under oath, in the preliminary injunction hearing in a

5  related lawsuit, that before the agreement was signed and at the time that he was receiving

6  additional pattern recognition technology for video.  This misrepresentation is now a basis for Mr.

7  Montgomery's claims.

8      44. Trepp, Frye, and eTreppid represented at the time of the deal in September of 1998 and

9  in so many words in the Operating Agreement that they and Mr. Montgomery would always be

10  50/50 partners as long as Montgomery served as Chief Technology Officer and developed the

11  technology on CD No. 1 for the business and that Montgomery's ownership interests would not be

12  changed by anything.

13      45. Trepp, Frye, and eTreppid represented that Trepp and eTreppid would not take money

14  out of the company for any personal business or other businesses of Trepp - Trepp has over forty

15  other businesses and this was one of Montgomery's concerns.  Trepp then proceeded to do just that

16  - a million dollars alone for airplane charters - and then used these money transfers to dilute Mr.

17  Montgomery's share. This was a fraudulent scheme typical of Trepp's modus operandi.

18      46. Trepp, Frye, and eTreppid represented verbally and in the Operating Agreement and in

19  the Contribution Agreement that Mr. Montgomery could see and review the books and records

20  whenever Montgomery wanted; however, Montgomery has never been permitted to review any

21  books.  This concealment or suppression of the facts in the records was part of the fraud,

22  particularly in the dilution process.

23      47. Additionally, Counterdefendants or others forged Mr. Montgomery's signature on at

24  least the second modification December 28, 2005 and the Guaranty agreement dated December 29,

25  2005.

26      48. Montgomery reasonably relied on these misrepresentations.

27      49. As a direct and proximate result of Counterdefendants' fraudulent conduct and

28  misrepresentations, Mr. Montgomery has suffered damages, including attorneys' fees to bring this

14                                  Answer and Counterclaim

1  action, in an amount to be determined according to proof at trial.

2      50. Counterdefendants' perpetuation of their fraud was intended by Counterdefendants to

3  cause injury to Counterclaimants or has been despicable conduct that has been carried on by

4  Counterdefendants with oppression, fraud, and malice with the intent to willfully injure, harass, vex,

5  and annoy Counterclaimants and with a conscious disregard for Counterclaimants' rights.

6  Therefore, Counterclaimants seek punitive damages against Counterdefendants.

7

8                    **SECOND CLAIM FOR RELIEF**

9      **(Breach Of Contract, Dennis Montgomery Against All Counterdefendants)**

10     51. Mr. Montgomery realleges the allegations contained in the foregoing paragraphs as

11  though fully set forth herein.

12     52. Between 2003 and 2005 FCP and Trepp entered into an oral contract with Mr.

13  Montgomery for Mr. Montgomery to create a stock market analysis system in exchange for

14  $10,000,000.

15     53.  Mr. Montgomery performed as specified by the contract.

16     54.  FCP and Trepp failed to perform as specified by the contract.

17     55. As a result of FCP and Trepp's breach of the contract, Mr. Montgomery suffered an

18  economic loss of at least $10,000,000.

19

20                    **THIRD CLAIM FOR RELIEF**

21     **(Breach Of Fiduciary Duty, Dennis Montgomery Against All Counterdefendants)**

22     56. Mr. Montgomery realleges the allegations contained in the foregoing paragraphs as

23  though fully set forth herein.

24     57. By virtue of Counterdefendants' relationship to Mr. Montgomery, Counterdefendants

25  owed Mr. Montgomery a fiduciary duty of trust and loyalty; and through their aforementioned

26  actions Counterdefendants breached that duty.

27     58.  As a proximate result of Counterdefendants' breach of their fiduciary duties, Mr.

28  Montgomery has suffered damages, including attorneys' fees to bring this action,  in an amount to

1   be determined according to proof at trial.

2        59.  Counterdefendants' breach of their fiduciary duty was intended by Counterdefendants to

3   cause injury to Counterclaimants or has been despicable conduct that has been carried on by

4   Counterdefendants with oppression, fraud, and malice with the intent to willfully injure, harass, vex,

5   and annoy Counterclaimants and with a conscious disregard for Counterclaimants' rights.

6   Therefore, Counterclaimants seek punitive damages against Counterdefendants.

7

8   **FOURTH CLAIM FOR RELIEF**

9   **(Constructive Fraud, Dennis Montgomery Against All Counterdefendants)**

10        60. Mr. Montgomery realleges the allegations contained in the foregoing paragraphs as

11   though fully set forth herein.

12        61. Counterdefendants' breach of their legal fiduciary duty to Mr. Montgomery constitutes

13   constructive fraud.

14        62.  As a proximate result of Counterdefendants' constructive fraud, Mr. Montgomery has

15   suffered damages, including attorneys' fees to bring this action,  in an amount to be determined

16   according to proof at trial

17

18   **FIFTH CLAIM FOR RELIEF**

19   **(Breach Of Implied Covenant Of Good Faith And Fair Dealing Against All**

20   **Counterdefendants)**

21        63. Mr. Montgomery realleges the allegations contained in the foregoing paragraphs as

22   though fully set forth herein.

23        64.  Counterdefendants agreed and implicitly entered into a covenant to not do anything to

24   deprive Mr. Montgomery of the benefits of the Contribution Agreement and his ownership interest

25   in eTreppid.

26        65.  As a result of the Counterdefendants' aforementioned conduct, they breached that

27   covenant when they intentionally diluted Mr. Montgomery's 50% share in eTreppid, through their

28   misrepresentations, fraudulent conduct, breach of contract, and breach of their fiduciary duties.

Answer and Counterclaim

66. As a proximate result of Counterdefendants' breach of their implied covenants of good faith and fair dealing, Mr. Montgomery has suffered damages, including attorney fees to bring this action, in an amount to be determined according to proof at trial.

## SIXTH CLAIM FOR RELIEF

### (Unjust Enrichment, Dennis Montgomery Against All Counterdefendants)

67. Mr. Montgomery realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

68. Mr. Montgomery conferred a value on the Counterdefendants by contributing his valuable technology contained on CD No. 1, and the Counterdefendants did not set aside to Mr. Montgomery his 50% interest in eTreppid.

69. It would be inequitable and unjust to allow Counterdefendants to retain the benefit conferred upon them without requiring them to deliver to Montgomery his expected 50% ownership interest in eTreppid.

70. Counterdefendants have been unjustly enriched in an amount in excess of $1,000,000 the exact amount to be proven at trial, and Counterdefendants should be ordered to convey the amount of said unjust enrichment to Mr. Montgomery according to proof at trial.

## SEVENTH CLAIM FOR RELIEF

### (Intentional Interference With Prospective Economic Advantage, Dennis Montgomery Against All Counterdefendants)

71. Mr. Montgomery realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

72. Economic relationships existed between Mr. Montgomery and FCP, and between Montgomery and eTreppid, and these relationships contained probable future economic benefits or advantages to Mr. Montgomery.

73. Counterdefendants knew of these economic relationships.

74. Counterdefendants intentionally engaged in wrongful conduct as alleged above and said

Answer and Counterclaim

1  conduct was designed to disrupt Montgomery's relationships with FCP and eTreppid.

2         75. These economic relationships between Montgomery and FCP and eTreppid were

3  actually interfered with or disrupted.

4         76. As a proximate result of Counterdefendants' interference with Montgomery's

5  relationships with FCP and eTreppid, Montgomery was damaged.

6         77.  Counterdefendants' intentional interference with Montgomery's economic relationships

7  with FCP and eTreppid was intended by Counterdefendants to cause injury to Counterclaimants or

8  has been despicable conduct that has been carried on by Counterdefendants with oppression, fraud,

9  and malice with the intent to willfully injure, harass, vex, and annoy Counterclaimants and with a

10 conscious disregard for Counterclaimants' rights.  Therefore, Counterclaimants seek punitive

11 damages against Counterdefendants.

12

13                          **EIGHTH CLAIM FOR RELIEF**

14  **(Negligent Interference With Prospective Economic Advantage, Dennis Montgomery Against**

15                          **All Counterdefendants)**

16         78.  Mr. Montgomery realleges the allegations contained in the foregoing paragraphs as

17 though fully set forth herein.

18         79.  Economic relationships existed between Mr. Montgomery and FCP, and between

19 Montgomery and eTreppid, and these relationships contained probable future economic benefits or

20 advantages to Mr. Montgomery.

21         80. Counterdefendants knew of these economic relationships.

22         81. Counterdefendants negligently engaged in wrongful conduct as alleged above and said

23 conduct disrupted Montgomery's relationships with FCP and eTreppid.

24         82. It was reasonably foreseeable that this negligent conduct would interfere or disrupt these

25 economic relationship if Counterdefendants failed to exercise due care.

26         83.  Counterdefendants were negligent and failed to exercise due care in relationship with

27 Montgomery's economic relationships with FCP and eTreppid.

28         84. These economic relationships between Montgomery and FCP and eTreppid were

1  actually interfered with or disrupted.

2      85. As a proximate result of Counterdefendants' interference with Montgomery's

3  relationships with FCP and eTreppid, Montgomery was damaged, specifically Montgomery lost in

4  whole or in part the economic benefit or advantage from the economic relationship.

5

6  **NINTH CLAIM FOR RELIEF**

7  **(Identity Theft, Dennis Montgomery Against All Counterdefendants)**

8      86. Mr. Montgomery realleges the allegations contained in the foregoing paragraphs as

9  though fully set forth herein.

10     87. Counterdefendants or their agents forged Mr. Montgomery's signature as alleged above.

11     88. By forging Mr. Montgomery's signature, Counterdefendants converted Mr.

12  Montgomery's identity for their own personal gain.

13     89. As a proximate result of Counterdefendants' forgery of Mr. Montgomery's signature,

14  Montgomery was damaged.

15     90. Counterdefendants' conversion of Mr. Montgomery's identity was intended by

16  Counterdefendants to cause injury to Counterclaimants or has been despicable conduct that has been

17  carried on by Counterdefendants with oppression, fraud, and malice with the intent to willfully

18  injure, harass, vex, and annoy Counterclaimants and with a conscious disregard for

19  Counterclaimants' rights. Therefore, Counterclaimants seek punitive damages against

20  Counterdefendants.

21

22  **TENTH CLAIM FOR RELIEF**

23  **(Civil Conspiracy Against All Counterdefendants)**

24     91. Mr. Montgomery realleges the allegations contained in the foregoing paragraphs as

25  though fully set forth herein.

26     92. Counterclaimants are informed and believe, and thereon allege that by their conduct and

27  alleged above, Counterdefendants knowingly and willfully conspired and agreed among themselves

28  to implement and maintain a scheme to dilute Mr. Montgomery's interest and profits from his

Answer and Counterclaim

1  relationships with eTreppid and FCP, and to misappropriate money away from Montgomery and

2  into the hands and coffers of Counterdefendants.

3      93. Counterdefendants, in furtherance of this conspiracy, made material misrepresentations

4  to Mr. Montgomery and suppressed and withheld material information from Montgomery.

5      94. As a proximate result of Counterdefendants' wrongful acts alleged herein Montgomery

6  has been damaged.

7      95. Counterdefendants' conspiracy was intended by Counterdefendants to cause injury to

8  Counterclaimants or has been despicable conduct that has been carried on by Counterdefendants

9  with oppression, fraud, and malice with the intent to willfully injure, harass, vex, and annoy

10 Counterclaimants and with a conscious disregard for Counterclaimants' rights.  Therefore,

11 Counterclaimants seek punitive damages against Counterdefendants.

12                          **ELEVENTH CLAIM FOR RELIEF**

13                              **(Accounting)**

14     96.  Mr. Montgomery realleges the allegations contained in the foregoing paragraphs as if

15 fully set forth herein.

16     97.  Trepp and Frye have repeatedly denied Montgomery access to the financial records of

17 eTreppid, intending thereby to conceal from Montgomery, a member, the actual financial condition

18 of the company, their transfers therefrom, withdrawls and payments to themselves and to others, to

19 which Montgomery was entitled.

20     98.  Montgomery is entitled to an accounting from all Counter Defendants of their receipt,

21 treatment and disposition of his payments made to then, including payments made on the

22 promissory note dated January 14, 1999 and the first modification, dated December 21, 2000.

23

24                              **PRAYER**

25     WHEREFORE, Counterclaimants pray judgment against all Counterdefendants:

26     1.     Judgment in this action be granted in favor of Counterclaimants and against

27 Counterdefendants in an amount to be determined according to proof at trial, together with interest

28 thereon from September 1998.

Answer and Counterclaim

2.     For reasonable attorneys' fees in an amount to be determined according to proof at trial for this action;

3.     For costs of this action;

4.     The court make a binding declaration of the rights, duties, status, and other legal relations of the parties;

5.     The court declare Counterdefendants are, and each of them severally is, liable to Counterclaimants to reimburse for all amounts paid by Counterclaimants in satisfaction of judgments against it, and interest and cost thereon; and that Counterdefendants are, and each severally is, liable to Counterclaimants for their costs, including legal fees;

6.     That any amount may be deemed due and owing under the Complaint by Plaintiffs against Defendants be applied as a setoff to the damages awarded to Counterclaimants in the instant action;

7.     For punitive damages for the willful, malicious, intentional conduct alleged herein;

8.     For an accounting from Counterdefendants for all financial operations of eTreppid and their connection therewith.  An Accounting from all Counterdefendants regarding the receipt of all funds transferred and paid by Montgomery to either of them;

9.     For such other and further relief as the court may deem proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Counterclaimants hereby demand a trial by jury in this action of any issues triable of right by a jury.

Respectfully Submitted,

DATED: June 8, 2007

by:  /s/
Ronald J. Logar, Esq.
Attorney for Dennis Montgomery, Brenda
Montgomery, and the Montgomery Family Trust.

Answer and Counterclaim

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Stephanie Onorato, declare: I am an employee in the City of Reno, County of Washoe, State of Nevada, employed by the Law Office of Logar & Pulver, PC, located at 225 S. Arlington Avenue, Suite A, Reno, Nevada 89501.  I am over the age of 18 years and not a party to this action.

I am readily familiar with the Law Office of Logar & Pulver's practice for the collection of mail, delivery of its hand-deliveries, their process of facsimile's and the practice of mailing.

Answer and Counterclaim

On June 8, 2007, I caused the foregoing document to be delivered to the following persons and/or entities:

Sent Via U.S. Regular Mail:                          Mr. Jerry M. Snyder, Esq.
                                                     Hale Lane Peek Dennison and Howard
                                                     5441 Kietzke Lane, Second Floor
                                                     Reno, NV 89511



                                                     /s/_____
                                                     Stephanie Onorato
                                                     Legal Assistant to the
                                                     Law Office of Logar & Pulver, PC

Answer and Counterclaim