J. Stephen Peek, Esq. (NV Bar #1758)
Jerry M. Snyder, Esq. (NV Bar #6830)
Adam G. Lang, Esq. (NV Bar #10117)
E-mail: speek@halelane.com;
jsnyder@halelane.com; alang@halelane.com
Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Tel: (775) 327-3000
Fax: (775) 786-6179
Attorneys for Friendly Capital Partners, L.P.,
eTreppid Technologies, LLC, Warren Trepp
and Douglas J. Frye

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| FRIENDLY CAPITAL PARTNERS, L.P., a California Limited Partnership, <br><br> Plaintiff, <br><br> vs. <br><br> DENNIS MONTGOMERY, BRENDA MONTGOMERY, and the MONTGOMERY FAMILY TRUST, a California trust, and DOES 1 through 10, individually <br><br> Defendant <br> _____ / <br> DENNIS MONTGOMERY, BRENDA MONTGOMERY, and the MONTGOMERY FAMILY TRUST, <br><br> Counterclaimants, <br><br> vs. <br><br> FRIENDLY CAPITAL PARTNERS, L.P., a California Limited Partnership; WARREN TREPP, an individual, ETREPPID TECHNOLOGIES, LLC, a Nevada Limited Liability Company, DOUGLAS J. FRYE, an individual, and DOES 1 – 10 inclusive. <br><br> Counterdefendants. <br> _____ / | Case No. 3:07-cv-00250-ECR-VPC <br><br> **FRIENDLY CAPITAL PARTNERS, L.P.'s, ETREPPID TECHNOLOGIES, LLC'S, AND WARREN TREPP'S MOTION TO STRIKE PORTIONS OF COUNTERCLAIM** |

::ODMA\PCDOCS\HLRNODOCS\651156\1            Page 1 of 12

**FRIENDLY CAPITAL PARTNERS, L.P.'s, ETREPPID TECHNOLOGIES, LLC'S, AND WARREN TREPP'S MOTION TO STRIKE PORTIONS OF COUNTERCLAIM**

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Counterdefendants Friendly Capital Partners, L.P. ("FCP"), Warren Trepp ("Trepp"), and eTreppid Technologies, LLC ("eTreppid") (FCP, Trepp, and eTreppid are hereinafter referred to collectively as "Counterdefendants") hereby move to strike certain portions of the Counterclaim filed by Defendants/Counterclaimants' Dennis Montgomery, Brenda Montgomery, and the Montgomery Family Trust (collectively "Montgomery").  This motion (hereinafter referred to as "Motion to Strike") is made on the grounds that the portions of the Counterclaim listed above contain immaterial, false, redundant and scandalous allegations, not essential to any of Montgomery's claims and should, therefore, be stricken.  This Motion is based on the following Points and Authorities, the pleadings and papers filed herein, and any oral argument this Court may allow.

## POINTS AND AUTHORITIES

**I.      Introduction**

This case arises out of Montgomery's default under a promissory note entered into with FCP.  Montgomery alleges as part of his counterclaim that FCP, Trepp, eTreppid, and Douglas J. Frye ("Frye") fraudulently misrepresented the financial condition of eTreppid to induce Montgomery to sign the promissory notes at issue in the case and that as a result, Montgomery's interest in eTreppid was diluted.  Even a cursory review of Montgomery's Counterclaim, however, reveals that it is fraught with scandalous, false, and inflammatory allegations that are irrelevant to this lawsuit.  Montgomery's Counterclaim is an overt attempt to rehash allegations that belong to another highly publicized lawsuit that is currently pending between eTreppid and Montgomery over Montgomery's unlawful possession of eTreppid's property and over the ownership of certain trade secrets (the "Trade Secret Litigation").  Rather than alleging facts in support of his present claims, Montgomery's Counterclaim is replete with immaterial, false, redundant and scandalous allegations that are not essential to any of his claims.  Counterdefendants respectfully request that this Court strike portions of the pleading set forth in this Motion to Strike, to bring efficiency to this litigation and to put an immediate end to Montgomery's

transparent attempt to prejudice the Court, the jury, and the public in general.

**II.      Procedural and Factual Background.[1]**

   A.      The Promissory Notes.

On January 14, 1999, Montgomery executed a Promissory Note (the "1999 Note") and a Security Agreement (the "1999 Security Agreement"), wherein FCP agreed to loan Montgomery $180,000.00 at an interest rate of 8% per annum. *See* Compl., at ¶ 4; *see also* Exhibit "A" to Compl. Pursuant to the terms of the 1999 Note, Montgomery was to repay the entire principal amount of the note, together with all accrued interest, on January 15, 2001. *Id.* The 1999 Note was secured by Montgomery's 50% membership interest in Intrepid Technologies, LLC, the predecessor to eTreppid Technologies, LLC, a Nevada limited liability company. *Id.*

On December 21, 2000, FCP and Montgomery executed an Agreement and Modification of Promissory Note and Security Agreement ("Modification No. 1"), which: (a) increased the principal amount of the loan to $600,000; (b) extended the maturity date of the loan to January 15, 2002, and (c) amended Defendants' limited liability company membership interest securing repayment of the note to be a 33% membership interest in eTreppid. *See* Compl., at ¶ 6. FCP filed a UCC-1 Financing Statement with the Nevada Secretary of State to this effect. *See* Exhibit "B" to Compl.

On or about December 29, 2005, FCP and Montgomery executed an Agreement and Modification of Promissory Note and Security Agreement ("Modification No. 2"), which: (a) increased the amount loaned to $1,379,795.01 and added the accrued but unpaid interest on the loan in the amount of $125,211.48 to the outstanding balance for a total amount owed of $1,505,006.49; (b) revised the maturity date of the loan to be due upon demand of FCP or on December 31, 2007 if no demand was made before that date; and (c) added a personal guaranty of the note by Montgomery. *See* Compl., at ¶ 8.

On August 4, 2006, FCP made a written demand to Defendants, pursuant to the requirements of

---

[1] Concurrently with the present motion, Counterdefendants are filing separate motions to dismiss. Obviously, the facts set forth in those motions are to a large extent identical to the facts set forth in this motion. However, for the convenience of the court and the parties, counsel will restate many of those facts in each of these motions.

::ODMA\PCDOCS\HLRNODOCS\651156\1             Page 3 of 12

the parties' Agreement, for payment of the $1,350,493.82, which then became due and owing within ten (10) days of the demand. *See* Compl., at ¶ 10. Defendants, however, failed to pay any of the requested amount and defaulted on the Agreement. *Id.* at ¶ 11. Consequently, FCP filed the present action to foreclose the collateral securing the promissory note and to collect any deficiency remaining after foreclosure, and brought claims for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Unjust Enrichment. On June 8, 2007, Montgomery filed his answer in the present matter, along with counterclaims against FCP, eTreppid, Trepp, and eTreppid's counsel Doug Frye.[2] Montgomery alleges putative claims against all Counterdefendants for (1) Fraud and Misrepresentation; (2) Breach of Contract; (3) Breach of Fiduciary Duty; (4) Constructive Fraud; (5) Breach of Implied Covenant of Good Faith and Fair Dealing; (6) Unjust Enrichment; (7) Intentional Interference with Prospective Economic Advantage; (8) Negligent Interference with Prospective Economic Advantage; (9) Identity Theft; (10) Civil Conspiracy; and (11) Accounting.

Montgomery alleges that FCP, eTreppid, Trepp, and Frye made representations to Montgomery about the financial condition of eTreppid to fraudulently induce Montgomery to sign the 1999 Note and subsequent modifications. *See* Counterclaim, at ¶¶ 23, 24, 42. Montgomery further alleges that his interest in eTreppid was "diluted" because Trepp and Frye misused eTreppid assets by engaging in self-dealing (*Id.* at ¶¶ 24, 25), transferring "millions of dollars out of eTreppid into FCP and later into Ascentia Capital." *Id.* at ¶ 31. Montgomery alleges that sometime between 2003 and 2005, "FCP and Trepp entered into an oral contract and agreed to pay Montgomery $10 million to create a predictive stock market analysis system." *Id.* at ¶ 52 (emphasis added).

Montgomery alleges that Trepp misrepresented the financial condition of eTreppid to fraudulently induce him into signing the promissory note. Dennis Montgomery is one of the early members of eTreppid and, prior to his departure in January 2006, was eTreppid's Chief Technology Officer. In January 2006, eTreppid discovered that Montgomery had deleted and stolen the source code for eTreppid's proprietary, confidential and secret software. eTreppid subsequently terminated

---

[2] Counterdefendants are unaware of any service of summons and complaint on Frye, as we have not seen any return of service filed by Montgomery.

::ODMA\PCDOCS\HLRNODOCS\651156\1          Page 4 of 12

Montgomery's employment and, on January 19, 2006, filed suit in Nevada State Court against him for misappropriation of trade secrets.[3]

Shortly after eTreppid filed its suit in state court, Montgomery filed an action in federal court alleging copyright infringement and various related claims against eTreppid and its chairman, Warren Trepp, as well as the United States Department of Defense.[4] On February 21, 2006, Montgomery filed his First Amended Complaint in this action, alleging claims for Copyright Infringement, Copyright Infringement by Distribution, Declaratory Judgment, Accounting, Breach of Fiduciary Duty, Fraud, Breach of Contract, Misappropriation of Trade Secrets, Conversion, and Declaratory Relief against the United States.

On February 17, 2006, Montgomery filed a counterclaim against eTreppid, and cross-claims against Warren Trepp and the United States Department of Defense in the state court action that eTreppid initiated. In this counterclaim, Montgomery alleged a claim for Accounting against eTreppid and Trepp, and a claim for Declaratory Relief against the United States Department of Defense. The United States subsequently removed this case to federal court,[5] and the two cases were ultimately consolidated into the Trade Secret Litigation.[6]

The claims Montgomery alleges against eTreppid and Trepp in the Trade Secret Litigation arise out of Montgomery's allegations that eTreppid infringed on certain copyrights held by Montgomery, that Trepp breached a fiduciary duty owed to eTreppid and Montgomery as a member of eTreppid (*See* Declaration of Adam G. Lang ("Lang Decl."), Ex. "1", at ¶¶ 41-42), that Trepp fraudulently represented that Montgomery would always be a 50% member of eTreppid (*See id.* at ¶¶ 46-47), and that eTreppid and Trepp breached certain alleged contractual obligations to maintain Montgomery's interest as a 50% member in eTreppid (*See id.* at ¶¶ 56-57). Notably, Montgomery has alleged claims

---

[3] *See ETreppid Technologies, Inc. v. Dennis Montgomery*, No. CV06-00114, filed 1/19/06 in the Second Judicial District Court of the State of Nevada in and for the County of Washoe.
[4] *See Dennis Montgomery, et al. v. ETreppid Technologies, LLC, et al.*, No. 3:06-CV-00056-BES-VPC, filed 1/31/06 in the United States District Court for the District of Nevada.
[5] *See ETreppid Technologies, LLC v. Montgomery, et al.*, No. 3:06-CV-00145-BES-VPC, Petition for Removal filed 3/20/06.
[6] *See ETreppid Technologies, LLC v. Montgomery, et al.*, No. 3:06-CV-00056-PMP-VPC & 3:06-CV-00145, consolidated 3/15/07.

::ODMA\PCDOCS\HLRNODOCS\651156\1     Page 5 of 12

Hale Lane Peek Dennison and Howard
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1 for fraud, breach of fiduciary duty, breach of contract, breach of the covenant of good faith and fair
2 dealing, and unjust enrichment in the context of the Trade Secret Litigation, and Montgomery re-
3 alleges those very same claims in his counterclaims against FCP, Trepp, Frye, and eTreppid.

**III.     Legal Statement.**

Under Rule 12(f) of the Federal Rules of Civil Procedure, "the court may order stricken from any pleading… any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike under Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Likewise, a motion to strike "is designed to eliminate allegations from the pleadings that might cause prejudice at some later point in the litigation." 5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1380 (1990). While motions to strike are ordinarily disfavored, the possibility that superfluous pleadings will cause the trier of fact to draw unwarranted inferences at trial is the type of prejudice that will support the granting of a motion to strike. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994) (holding that the district court properly struck lengthy, immaterial factual allegations). The courts "do not provide a forum for mudslinging, name calling and 'privileged' defamation," *Morales v. Digital Equipment Corp.*, 669 F. Supp. 1173, 1187 (D. P.R. 1987), and, therefore, motions to strike are generally granted for scandalous material that improperly casts a derogatory light on a party. *Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 641-42 (S.D.N.Y. 2001); *see also Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 665 (7th Cir. 1992).

Redundant, impertinent and immaterial allegations should be stricken from a pleading when they have no bearing on the issues in the case, and would result in prejudice to the moving party *Metrokane, Inc.*, 160 F. Supp. 2d at 641-42. Redundant matter has been defined as that which "consists of allegations that constitute a needless repetition of other averments." 5C Wright & Miller, *Federal Practice and Procedure*, § 1382 at 704 (2d ed. 1990). Immaterial matter includes "that which has no essential or important relationship to the claim for relief or the defenses being pleaded," and impertinent matter consists of statements "that do not pertain, and are not necessary, to the issues in

question." *Fantasy, Inc.*, 984 F.2d at 1527. Scandalous matter is "that which improperly casts a derogatory light on someone, most typically a party to the action." 5C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure, § 1382. Here, Montgomery's Counterclaim contains numerous allegations which are redundant, immaterial, impertinent or scandalous that should be stricken from the pleading.

    A.    <u>Allegations Referencing eTreppid's Alleged Misuse of Trade Secrets Should be Stricken as Immaterial, Impertinent, Scandalous and Highly Prejudicial.</u>

Montgomery attempts to connect this case to a separate, highly publicized case between Montgomery and eTreppid, involving a dispute over certain trade secrets. Consequently, Montgomery's counterclaim contains numerous scandalous allegations that bear no relevance to any of Montgomery's claims in this case or for that matter in the Trade Secret Litigation. Montgomery's attempt to rehash baseless allegations that are the subject of separate litigation should be stricken from the pleading as immaterial, impertinent, scandalous and highly prejudicial. In particular, the following paragraphs should be stricken from Montgomery's counterclaim.

- Paragraph 5 in its entirety. The "allegations" in this paragraph are merely Montgomery's spin on the eTreppid litigation and bear no relationship to Montgomery's claims. Further, the flamboyant accusations made in this paragraph are likely to result in prejudice to Mr. Trepp and should, therefore, be stricken. Montgomery's references to the investigation of Governor Jim Gibbons are scandalous in nature and are immaterial to this case. Montgomery's characterization of Mr. Trepp is likewise scandalous and immaterial to this case. Further, Montgomery's claim that FCP has filed its complaint for retaliatory purposes, is highly prejudicial and completely immaterial. In short, these allegations have nothing to do with this case, are highly prejudicial, and this paragraph should be stricken in its entirety. *See Fantasy, Inc.*, 984 F.2d at 1528 (1993) (striking lengthy, immaterial factual allegations).

- Paragraph 16 in its entirety. Mr. Montgomery's alleged development of the software described in this paragraph bears no relationship to any of his claims and should be stricken as impertinent and immaterial. *See Metrokane, Inc.,* 160 F. Supp.2d at 642 (2001).

::ODMA\PCDOCS\HLRNODOCS\651156\1        Page 7 of 12

- Paragraphs 21-22 in their entirety. The alleged ownership of the technology described in these paragraphs bears no relationship to any of Montgomery's claims and should be stricken as impertinent and immaterial. *Id.* at 642.

- Paragraphs 34-36 in their entirety. The licensing issues regarding eTreppid's technology bear no relationship to any of Montgomery's claims and should be stricken as impertinent and immaterial. *Id.*

- Paragraph 43 in its entirety. Montgomery alleges that Trepp and Frye lied under oath with respect to the conveyance of eTreppid's technology. These allegations bear no relationship to this case, are scandalous, impertinent and immaterial and should be stricken. *See Fantasy, Inc.*, 984 F.2d at 1528 (1993).

B.  <u>Allegations Regarding Trepp's and Frye's Business Practices Should Be Stricken As Immaterial, Impertinent, Scandalous and Highly Prejudicial.</u>

Montgomery attempts to prejudice the Court and the public by claiming that FCP is an "alter ego" of Trepp and Frye, that Trepp and Frye have created "diversion companies," and by referencing Trepp's and Frye's relationship with Michael Milken. None of these allegations bear any relationship to Montgomery's claim that he was fraudulently induced to sign the promissory notes. Indeed, these allegations can only be construed as being scandalous and highly prejudicial. Accordingly, the following paragraphs should be stricken:

- Paragraph 1: "FCP is the alter ego of Warren Trepp and Douglas Frye." This is a legal conclusion on the part of Montgomery, is prejudicial and should be stricken. *See Fantasy, Inc.*, 984 F.2d at 1528 (1993).

- Paragraph 1: "…who was the chief trader for Michael Milken during the largest junk bond scandal in U.S. history." This is a prejudicial and scandalous statement and wholly irrelevant to this case. Montgomery cannot and does not even attempt to demonstrate how Trepp's alleged relationship to Mr. Milken is relevant to any of Montgomery's claims. Indeed, any references to Michael Milken are merely attempts on the part of Montgomery to prejudice the Court and the public against counterdefendants and are designed to have the court and the public draw

::ODMA\PCDOCS\HLRNODOCS\651156\1        Page 8 of 12

some untoward or nefarious inference that Trepp is guilty by association – clearly an abuse of the litigation privilege. *See Morales*, 669 F. Supp. at 1187 (1987) (granting motion to strike scandalous material that improperly casts a derogatory light on a party).

- Paragraph 1: "… and is the alter ego of Counter Defendants, Warren Trepp, Douglas J. Frye and Friendly Capital Partners, L.P." This is a legal conclusion on the part of Montgomery, is prejudicial, and redundant, and should be stricken. *See Fantasy, Inc.*, 984 F.2d at 1528 (1993).

- Paragraphs 2-4 in their entirety. These paragraphs claim that FCP is a "diversion company" and refer to other "diversion companies" allegedly controlled by Trepp and Frye. Such allegations are not only scandalous and highly prejudicial, but they bear no relationship to any of Montgomery's claims and should be stricken. *Id.* at 1528.

- Paragraph 12: "Frye has been Trepp's lawyer since Trepp's days as Michael Milken's chief trader." This statement is highly prejudicial, redundant, and bears no relationship to any of Montgomery's claims and, coupled with Paragraph 1, is designed to have the court and the public draw an untoward inference about Trepp due to his association with Michael Milken. *See Morales*, 669 F. Supp. at 1187 (1987).

- Paragraph 13 in its entirety. Sue Perez is not a named party in this case and this paragraph should be stricken as immaterial and impertinent. *See Metrokane, Inc.,* 160 F. Supp.2d at 642 (2001).

- Paragraph 25 in its entirety. This paragraph alleges that Trepp and Frye misused eTreppid assets which somehow "diluted Mr. Montgomery's share of the company." The allegation that Trepp "washed" his private expenses through eTreppid including "private jet flights" is scandalous, highly prejudicial, and bears no relationship to any of Montgomery's claims. Although Montgomery claims that Trepp's and Frye's actions "diluted" his share of the company, there is clearly no relationship between his allegations against Frye and Trepp and the value of his share in the company. This paragraph is no more than an attempt on the part of Montgomery to incite prejudice against Trepp and Frye and it should be stricken as scandalous and impertinent. *See Morales*, 669 F. Supp. at 1187 (1987).

- Paragraph 26 in its entirety. Montgomery alleges that Trepp employed "illegal aliens" and paid for them using eTreppid expenses. Montgomery further alleges that Trepp and Frye used relationships with government officials to do so. These statements are scandalous and meant only to prejudice the Court and the public against Trepp and Frye and should be stricken as scandalous and nothing more than Montgomery's effort to hide behind the litigation privilege and defame Trepp. *Id.* at 1187.
- Paragraph 31 in its entirety. Trepp's involvement with Ascentia bears no relationship to this case and should be stricken as impertinent and immaterial. *See Fantasy, Inc.*, 984 F.2d at 1528 (1993).
- Paragraph 32: "As agents of their alter ego companies…" This is a legal conclusion on the part of Montgomery, is prejudicial and redundant and should be stricken. *Id.* at 1528.
- Paragraph 32: "Furthermore, Frye had a conflict of interest because he represented Trepp and FCP when Frye approached Mr. Montgomery with signature pages for some, but not all, of the notes, and advised Montgomery to sign these signature pages without access to the documents as a whole." This statement bears no relationship to any of Montgomery's claims, is prejudicial and should be stricken. *Id.*
- Paragraph 37: "…an alter ego of Trepp and Frye…" This is a legal conclusion on the part of Montgomery that is prejudicial and redundant and should be stricken. *Id.*
- Paragraph 45: "Trepp has over forty other businesses and this was one of Montgomery's concerns. Trepp then proceeded to do just that – a million dollars alone for airplane charters – and then used these money transfers to dilute Mr. Montgomery's share. This was a fraudulent scheme typical of Trepp's modus operandi." The allegation that Trepp has "over forty other businesses" is scandalous, impertinent and immaterial and bears no relationship to any of his claims. Further, the allegation that Trepp took a million dollars out of eTreppid for airplane charters is prejudicial and scandalous and should be stricken. *See Morales*, 669 F. Supp. at 1187 (1987).
- Paragraphs 50, 59, 77, 90, and 95: "…or has been despicable conduct that has been carried on

by Counterdefendants with oppression, fraud, and malice with the intent to willfully injure, harass, vex, and annoy Countereclaimants and with a conscious disregard for Counterclaimants' rights." These allegations by Montgomery are scandalous, highly prejudicial, and redundant and should be stricken. *Id.* at 1187.

## IV. Conclusion.

For all of the foregoing reasons, Counterdefendants respectfully request that the paragraphs set forth herein be stricken from Montgomery's Counterclaim.

Dated: July 25, 2007

>       /s/
> J. Stephen Peek, Esq. (NV Bar #1758)
> Jerry M. Snyder, Esq. (NV Bar #6830)
> Adam G. Lang, Esq. (NV Bar #10117)
> Hale Lane Peek Dennison and Howard
> 5441 Kietzke Lane, Second Floor
> Reno, NV 89511
> Tel: (775) 327-3000
> Fax: (775) 786-6179
>
> Attorneys for Friendly Capital Partners, L.P., eTreppid Technologies, LLC, Warren Trepp and Douglas J. Frye

**PROOF OF SERVICE**

I, Gaylene Silva, declare:

I am employed in the **City of Reno, County of Washoe, State of Nevada,** by the law offices of Hale Lane Peek Dennison and Howard. My business address is: **5441 Kietzke Lane, Second Floor, Reno, Nevada 89511**. I am over the age of 18 years and not a party to this action

I am readily familiar with Hale Lane Peek Dennison and Howard's practice for collection of mail, delivery of its hand-deliveries and their process of faxes.

On July 25, 2007, I caused the foregoing **FRIENDLY CAPITAL PARTNERS, L.P.'S, ETREPPID TECHNOLOGIES, LLC'S, AND WARREN TREPP'S MOTION TO STRIKE PORTIONS OF COUNTERCLAIM** to be:

  X    filed the document electronically with the U.S. District Court and therefore the court's computer system has electronically delivered a copy of the foregoing document to the following person(s) at the following e-mail addresses:

*Fax No. 786-5044*
Email Lezlie@renofamilylaw.com
Ronald J. Logar, Esq.
Eric A. Pulver, Esq.
The Law Offices of Logar & Pulver
225 S. Arlington Avenue, Suite A
Reno, NV 89501

*Fax No. 858-759-0711*
Email mailto:mjfbb@msn.com
And mailto:cdimare@worldnet.att.net
Michael J. Flynn, Esq.
P.O. Box 690
6125 El Tordo
Rancho Santa Fe, CA  90267

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on July 25, 2007.

___/s/_____
Gaylene Silva