1  Mark H. Gunderson, Esq. (SBN: 2134)
   Catherine A. Reichenberg, Esq. (SBN: 10362)
2  MARK H. GUNDERSON, LTD.
   5345 Kietzke Lane, Suite 200
3  Reno, Nevada 89511
   Telephone:  (775) 829-1222
4  Facsimile:  (775) 829-1226

5  Deborah A. Klar, Esq. (SBN: CA 124750)
   Teri T. Pham, Esq. (SBN: CA 193383)
6  LINER YANKELEVITZ
   SUNSHINE & REGENSTREIF LLP
7  1100 Glendon Avenue, 14th Floor
   Los Angeles, California 90024-3503
8  Telephone:  (310) 500-3500
   Facsimile:  (310) 500-3501
9  [ADMITTED PRO HAC VICE]

10 Attorneys for Defendants and Counterclaimants
   Dennis Montgomery, Brenda Montgomery, and the
11 Montgomery Family Trust

12                **UNITED STATES DISTRICT COURT**

13                    **DISTRICT OF NEVADA**

14

15 FRIENDLY CAPITAL PARTNERS, L.P., a        )   Case No. 3:07-CV-00250-TBA-VPC
   California Limited Partnership,            )
16                                            )   [MOTION TO CONSOLIDATE WITH
                   Plaintiff,                 )   CASE NOS. CV-00056-PMP-VPC AND
17                                            )   CV-00145-PMP-VPC PENDING]
            vs.                               )
18                                            )   **COUNTERCLAIMANTS' OPPOSITION**
   DENNIS MONTGOMERY, BRENDA                  )   **TO MOTION TO DISMISS FIRST**
19 MONTGOMERY, and the MONTGOMERY             )   **AMENDED COUNTERCLAIM;**
   FAMILY TRUST, a California trust, and DOES )   **MEMORANDUM OF POINTS AND**
20 1 through 10, individually,                )   **AUTHORITIES**
                                              )
21                 Defendants.                )
                                              )
22 _____)
                                              )
23 AND RELATED COUNTERCLAIM.                  )
                                              )
24

25

26

27

28

0039641/003/ 365974v01

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### INTRODUCTION AND SUMMARY OF ARGUMENT

4        This action is the latest in several litigations initiated by counterdefendant Warren Trepp

5   and his alter ego company Friendly Capital Partners, L.P. ("FCP") in their attempts to oust

6   counterclaimants Dennis Montgomery and the Montgomery Family Trust ("the Montgomery

7   parties") as owners of eTreppid Technologies, LLC ("eTreppid") and to steal valuable technology

8   developed and owned by the Montgomery parties. Having failed in their attempts to obtain a

9   turnover order of the Montgomery parties' valuable technology from the Nevada State Court

10  through their request for an injunction, Trepp then enlisted the aid of the United States Government

11  to obtain a search warrant and to seize the technology from Mr. Montgomery's home under the

12  guise of "classified" information. That search warrant was subsequently found to be

13  unconstitutional by this Court and all property seized from Mr. Montgomery was returned to him.

14  This Court also denied Trepp's request to have the property delivered to eTreppid instead, and most

15  recently denied Trepp's request to "modify" the Nevada State Court's injunction to require the

16  materials turned over to eTreppid in connection with the litigation before this Court concerning

17  ownership of the technology (the "Technology Litigation").

18       By this action, Trepp now seeks to foreclose on the Montgomery parties' interests in

19  eTreppid pursuant to alleged promissory notes and security agreements, in the hopes of seizing the

20  technology from the Montgomery parties as part of their alleged collateral. This latest litigation

21  tactic, like the previous, must also fail since (1) the Montgomery parties' technology is not part of

22  the collateral, and (2) the alleged promissory note which is the basis of Trepp's latest complaint via

23  FCP is a forgery.

24       The Montgomery parties' counterclaim in this action, on the other hand, alleges very

25  specific meritorious claims against Trepp, FCP and eTreppid for breach of contract, fraud, breach

26  of fiduciary duty, conversion, and declaratory relief in connection with Trepp's mismanagement of

27  eTreppid and dilution of the Montgomery parties' interests in eTreppid using the promissory notes

28  and related agreements. Given the clear overlap in facts and issues, the Montgomery parties have

2

1   accordingly made a motion to consolidate this action with the Technology Litigation, and that
2   motion is presently pending   Although Trepp opposes the motion to consolidate, he now brings
3   this motion to dismiss on the ground that all of the claims alleged in the Montgomery parties'
4   counterclaim are identical to their claims in the Technology Litigation   While the claims are
5   clearly related and should be consolidated, they are distinctive in that the claims in the Technology
6   Litigation are focused on Trepp's wrongful actions in connection with the misappropriation of the
7   Montgomery parties' technology, while the claims in this action are focused on Trepp's misuse and
8   mismanagement of eTreppid's financial assets and fraud in inducing the Montgomery parties to
9   enter into the promissory notes and related agreements   Trepp's arguments regarding claim-
10  splitting are therefore misplaced

11          Furthermore, Trepp's argument that the Montgomery parties' fraud claim is not plead with
12  sufficient particularity misconstrues the requirements of Federal Rule of Civil Procedure 9, and
13  ignores the very specific and plain allegations concerning Trepp's false representations and the
14  Montgomery parties' reliance   Similarly, Trepp ignores clear Nevada authority allowing the
15  Montgomery parties to pursue direct claims against Trepp for his conversion of eTreppid's assets,
16  and further ignores the specific allegations supporting the Montgomery parties' unjust enrichment
17  claim.  Trepp's motion to dismiss should accordingly be denied.

18                                              **II.**

19                              **FACTUAL BACKGROUND**

20          Counterclaimant Dennis Montgomery is a highly skilled scientist and software engineer
21  Prior to 1998, Dennis Montgomery developed certain software, which was copyrighted with the
22  United States Copyright Office and assigned to the Montgomery Family Trust ("Trust")   First
23  Amended Counterclaim ("FAC") at ¶ 3

24          In or around September 1998, Dennis Montgomery and Trepp formed eTreppid.  FAC at
25  ¶ 10).  Pursuant to a "Contribution Agreement" dated September 28, 1998, the Montgomery parties
26  contributed specific technology identified in Paragraph 1.2.1 of the Contribution Agreement (the
27  "Compression Technology") in exchange for a 50% interest in eTreppid.  FAC at ¶ 11.  No other
28  technology was contributed.

                                              3

1         At the same time, Trepp and his alter ego company, FCP, agreed to contribute $1,300,000

2  in liquid capital into eTreppid in exchange for a 50% interest in eTreppid. FAC at ¶ 12. The

3  Montgomery Parties are informed and believe, however, that Trepp and FCP never made the

4  required capital contribution. FAC at ¶ 25. Instead, unbeknownst to the Montgomery parties,

5  Trepp treated eTreppid like his own personal piggy bank. Among other things, Trepp paid for

6  personal trips for himself and his family, and others with eTreppid funds. FAC at ¶ 25. He hired

7  illegal aliens to work in his home and compensated them with eTreppid funds. FAC at ¶ 26. He

8  also channeled money out of eTreppid and into other entities owned by him and his family

9  members, including FCP. FAC at ¶ 28. At the same time, however, Trepp demanded that the

10  Montgomery parties contribute additional money into eTreppid for the company's operations and

11  to maintain their ownership interests in eTreppid. FAC at ¶¶ 15,16, 20. Trepp further induced the

12  Montgomery parties to borrow money from FCP pursuant to various promissory notes in order to

13  make those additional contributions to eTreppid. FAC at ¶¶ 17-18, 20, 21. Trepp also induced the

14  Montgomery parties to sell portions of their ownership interest in eTreppid to others in order to

15  repay the promissory notes. FAC at ¶ 24.

16         Over the course of their business relationship, Trepp, through eTreppid, also

17  misappropriated and exploited software and technology developed and owned by the Montgomery

18  parties, which had not been contributed to the company. See First Amended Complaint by Dennis

19  Montgomery and the Montgomery Family Trust, *Montgomery et al. v. eTreppid Technologies, LLC*

20  *et al.*, USDC NV Case No. 06-CV-00056-PMP-VPC, attached to Request for Judicial Notice

21  ("RFJN") 1. Rather than pay and compensate the Montgomery parties for eTreppid's use of the

22  Montgomery parties' technology, Trepp sought to end the parties' business relationship and to steal

23  the technology for himself.

24         On January 19, 2006, Trepp, through eTreppid, filed a Complaint against the Montgomery

25  parties in the Nevada State Court seeking a determination that eTreppid is the owner of the

26  Montgomery parties' technology, and alleging claims for misappropriation and breach of fiduciary

27  duty against the Montgomery Parties. On January 31, 2006, the Montgomery parties filed a

28  Complaint in this Court alleging copyright infringement, misappropriation of trade secrets, breach

4

1  of fiduciary duty and related claims against Trepp, and eTreppid and thereafter filed a First

2  Amended Complaint. See RFJN 1

3       On March 20, 2006, eTreppid's state court action was removed to this Court, and eTreppid

4  thereafter filed a Second Amended Complaint. See Second Amended Complaint by eTreppid

5  Technologies, LLC, *eTreppid Technologies, LLC v  Montgomery et al*, USDC NV Case No. 06-

6  CV-00145-PMP-VPC, RFJN 2  On May 15, 2006, the Montgomery parties filed a motion to

7  consolidate the two actions. On March 15, 2007, this Court granted that motion and consolidated

8  both actions for all purposes (collectively "the Technology Litigation").[1]  See RFJN 3.

9       On April 23, 2007, Trepp, through his alter ego corporation, FCP, filed the present action in

10 the Nevada State Court against the Montgomery parties for breach of contract and related claims

11 relating to the purported promissory notes between FCP and the Montgomery parties  On May 25,

12 2007, the Montgomery Parties removed this action to this Court. On June 8, 2007, the

13 Montgomery parties filed an Answer and Counterclaim against FCP, Trepp and others for breach

14 of fiduciary duty, fraud and related claims concerning the promissory notes and Trepp's dilution of

15 eTreppid and thereafter filed a First Amended Counterclaim. See RFJN 6.

16      Trepp now seeks to dismiss certain of the Montgomery parties' counterclaims on the

17 ground that they are identical to the claims alleged in the Technology Litigation and/or fail to state

18 a claim. As discussed below, Trepp's arguments are misplaced and fail to acknowledge the plain

19 allegations in the Montgomery parties' counterclaim.

20

21

---

22 [1]  Upon filing its state court action, eTreppid immediately sought and obtained a preliminary
   injunction enjoining the Montgomery parties from transferring the technology during the pendency
23 of the litigation. However, the state court refused to grant an order requiring the Montgomery
   parties to turn over the technology to eTreppid. RFJN 4  eTreppid then attempted to use the
24 government as a pawn to seize the Montgomery parties' property via a search warrant. That search
   warrant was subsequently found to be unconstitutional, and this Court ordered the Montgomery
25 parties' property returned to them. eTreppid filed a motion requesting that the Montgomery
   parties' property be returned to eTreppid instead. This Court denied that request. RFJN 5. Upon
26 removal of the state court case to this Court, eTreppid then filed a motion to modify the state court
   preliminary injunction in yet another attempt to require the Montgomery parties to turn over the
27 technology to eTreppid  This Court also denied that request and instead sought to maintain the
   status quo. RFJN 6.

28

# III.

# ARGUMENT

### A.    The Fraud Claim is Sufficient.

As a preliminary matter, the Montgomery parties' fraud claim is sufficiently plead with particularity and facts to state a claim. Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead averments of fraud or mistake with particularity. Fed. R. Civ. Proc. 9(b). Rule 9(b)'s particularity requirement, however, must be read in harmony with Rule 8's requirement of a short and plain statement of the claim. Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 876 (6th Cir. 2006). Thus, the particularity requirement is satisfied if the pleading "identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989).

Here, the Montgomery parties allege in their First Amended Counterclaim:

> 14.   In or about late 1998, Mr. Montgomery learned that Trepp had unilaterally increased his and FCP's ownership interest in eTreppid and decreased the Trust's ownership interest in eTreppid.

> 15.   Trepp represented to Mr. Montgomery that eTreppid's business needs required him and FCP to invest more than the $1,300,000 that he initially agreed to infuse as capital into eTreppid. As a result of this additional capitalization, Trepp claimed that he and FCP were entitled to an increased ownership interest in eTreppid.

> 16.   Knowing that the Counterclaimants did not have liquid funds to invest, Trepp represented that FCP could advance the needed funds to eTreppid on behalf of the Trust.

> 17   Accordingly, on or about January 14, 1999, Dennis and Brenda Montgomery, on behalf of the Trust, signed a promissory note in favor of FCP that would allow the Trust to borrow up to $180,000, which was to be used, for among other things, to supply the Trust's portion of additional capital to eTreppid ("the First Promissory Note")

The Montgomery parties also allege:

> 20.   On several occasions between 1999 and 2000, Trepp again represented to Mr. Montgomery that eTreppid needed a capital infusion to remain viable. Trepp again represented to Mr. Montgomery that Trepp had made an additional capital contribution to eTreppid to keep it operating and that if the Trust wished to maintain a 50% ownership interest in eTreppid, the Trust would also need to make an additional capital investment in eTreppid. Trepp represented to Mr. Montgomery that FCP would advance the money on behalf of the Trust in order to make the investment

6

1      21.    In reliance on Trepp's representations, on or about December 21,
2000, Dennis and Brenda Montgomery, on behalf of the Trust, signed a
2  modification to the First Promissory Note dated December 21, 2000 in favor of FCP
(the "Second Promissory Note").

3
          22.    Counterclaimants are informed and believe and thereupon allege that
4  Trepp and FCP never did invest the monies purportedly borrowed from FCP into
eTreppid.
5

6  The Montgomery parties further specifically allege:

7      36.    As set forth above, beginning in or about 1998, Trepp represented to
Counterclaimants that eTreppid required funds for its operations, and that he and
8  FCP had and would invest monies into eTreppid on behalf of themselves and as
loans to the Trust to capitalize the company and to supply its operating expenses.
9
          37.    When Trepp made these representations, he knew them to be false
10  and made these representations with the intention to deceive and defraud the
Counterclaimants to act in reliance on these representations, or with the expectation
11  that they would so act.

12      38.    At the time these representations were made by Trepp and at the time
Counterclaimants took the actions herein alleged, they were ignorant of the falsity of
13  Trepp's representations and believed them to be true. In reliance upon these
representations, Counterclaimants were induced to and did execute and thereafter
14  repaid the First Promissory Note and the Second Promissory Note on behalf of the
Trust, and did sell a portion of the Trust's ownership interest in eTreppid to others.
15  Had Counterclaimants known of the actual facts, they would not have taken such
actions.
16

17      Given these very specific allegations of the false representations made by Trepp on behalf

18  of himself and FCP and the Montgomery parties' detrimental reliance, it is unclear what allegations

19  Trepp claims lacks particularity. As the managing member of eTreppid, Trepp represented to the

20  Montgomery parties that the company was in need of funds to continue operations. Those

21  statements were false. In fact, the company had sufficient funds, but Trepp was mismanaging the

22  company's assets and using them for his own benefit. The Montgomery parties detrimentally

23  relied on Trepp's false statements by borrowing money from FCP and selling off their ownership

24  interests in order to contribute the funds to eTreppid. Nothing could be more clear.

25      For these same reasons, Trepp's argument that the Montgomery parties have failed to state

26  a claim for fraud must also fail. First, in support of his argument, Trepp relies upon an Amended

27  and Restated Operating Agreement ("the Operating Agreement") which is outside the scope of the

28  pleadings and should not be considered in connection with this Rule 12(b)(6) motion. Arpin v.

7

1   Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001). Second, Trepp's argument

2   that the Operating Agreement somehow shields him from a claim of fraud is nonsensical. Nothing

3   in the Operating Agreement allows Trepp to make capital contribution calls under false pretenses.

4   Furthermore, nothing in the Operating Agreement allows Trepp to misuse the company's funds.

5   Indeed, as the managing member and an officer of the company, Trepp owed a fiduciary duty to the

6   company and to the Montgomery parties to act in their best interests, and not merely for the benefit

7   of himself. Accordingly, the Montgomery parties have sufficiently stated a claim for fraud.

8          **B.**     **The Montgomery Parties Have Standing to Bring the Conversion Claim.**

9        Contrary to Trepp's claim, the Montgomery parties do allege that Trepp and FCP

10  wrongfully converted assets belonging to them. As set forth above and in the FAC, the

11  Montgomery parties allege that Trepp and FCP never deposited the monies borrowed by the

12  Montgomery parties from FCP into eTreppid, but instead, used those monies for their own benefit.

13  FAC at ¶¶ 19, 22, 25-30. Because the Montgomery parties borrowed those monies and ultimately

14  had to repay those monies to FCP, Trepp and FCP unlawfully converted those monies belonging to

15  the Montgomery parties.

16        Furthermore, to the extent the monies were converted once deposited into eTreppid, the

17  Montgomery parties clearly have standing to bring the claim for conversion on behalf of eTreppid.

18  Nevada law permits direct actions by minority shareholders on behalf of the corporation against

19  majority shareholders in closely held corporations. Simon v. Mann, 373 F.Supp 2d 1196, 1198-99

20  (D.Nev. 2005). Additionally, Nevada law permits minority shareholders in closely held

21  corporations to bring an individual cause of action "when the wrong is both to the stockholder as an

22  individual and to the corporation." Id.; see also Phillips v. Parker, 794 P 2d 716, 718 (Nev 1990)

23  (referring to statutory and common law rights accompanying status as a minority shareholder in a

24  closely held corporation). Therefore, the Montgomery parties have standing to pursue a claim for

25  conversion against Trepp and FCP.

26

27

28

0039641/003/ 365974v01

1
2

**C.      The Montgomery Parties Have Properly Alleged a Claim for Unjust**
         **Enrichment.**

3       Like his argument regarding the fraud claim, Trepp's argument that the unjust enrichment
4   claim lacks specificity is also without merit. As clearly alleged in the FAC, among other things,
5   Trepp and his alter ego company, FCP, took money and assets belonging to eTreppid for their own
6   personal use and enjoyment. FAC at ¶¶ 25-26. They also unilaterally increased their own interests
7   in eTreppid, while reducing the Montgomery parties' interests under false pretenses. FAC at ¶ 14.
8   Furthermore, they fraudulently transferred money out of eTreppid into companies owned and
9   controlled by Trepp. FAC at ¶¶ 27-30. All of these allegations are specifically incorporated into
10  the Montgomery parties' sixth counterclaim for unjust enrichment. FAC at ¶ 61. Moreover, as
11  alter egos of one another, Trepp and FCP are equally liable for the damages suffered by the
12  Montgomery parties as a result of their wrongful conduct. Accordingly, this claim is also
13  sufficiently plead.

14
15

**D.      The Counterclaims Are Not Identical to the Montgomery Parties' Technology**
         **Litigation Claims.**

16      While arguing that this action should not be consolidated with the Technology Litigation,
17  Trepp claims that the claims in this action are identical to those alleged in the Technology
18  Litigation. Although clearly related, these claims are clearly not identical. Each of the fraud,
19  breach of fiduciary duty, breach of contract, and conversion claims in this action relate to and arise
20  out of Trepp's and FCP's fraud and mismanagement relating to eTreppid's funds and monetary
21  capital contributions. Indeed, as clearly set forth in the FAC, but for Trepp's and FCP's mis-
22  management, breaches of fiduciary duty, fraud and conversion, the Montgomery parties would not
23  have entered into the promissory notes with FCP which are the basis of FCP's complaint. These
24  claims are therefore distinguished from the Montgomery parties' claims in the Technology
25  Litigation which focus on Trepp's and eTreppid's fraud and misappropriation relating to certain
26  technology developed by the Montgomery parties, the value of such technology, and the distinction
27  between technology which was contributed to eTreppid pursuant to the Contribution Agreement,

28

9

1 | and technology that was not. Trepp's attempts to lump these claims all together in order to avoid

2 | responsibility for all of his wrongful conduct must therefore fail.

3 | ## IV.

4 | ## CONCLUSION

5 | For all the foregoing reasons, Counterclaimants Dennis Montgomery, Brenda Montgomery

6 | and the Montgomery Family Trust respectfully request that the Court deny counterdefendants'

7 | Motion to Dismiss the First Amended Counterclaim.

8 | Dated: October 5, 2007                    Respectfully submitted,

9 |                                           LINER YANKELEVITZ
                                              SUNSHINE & REGENSTREIF LLP

11 |                                          By: _____

12 |                                              Teri T. Pham
                                                 Attorneys for Defendants and
13 |                                              Counterclaimants Dennis Montgomery,
                                                 Brenda Montgomery and the Montgomery
14 |                                              Family Trust

1

2

## CERTIFICATE OF SERVICE

3    Pursuant to NRCP 5(b), I certify that I am an employee of the LAW OFFICES OF LINER
YANKELEVITZ SUNSHINE & REGENSTREIF LLP, and that on the **5th day of October, 2007,**

4  I caused to be served the within document described as **COUNTERCLAIMANTS'**
**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM;**

5  **MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as
stated below:

6

J. Stephen Peek, Esq.
7  Jerry M. Snyder, Esq.                            Mark H. Gunderson, Esq.
Adam G. Lang, Esq                                Catherine A. Reichenberg, Esq.
8  Hale Lane Peek Dennison and Howard              MARK H. GUNDERSON, Ltd., APC
5441 Kietzke Lane                                5345 Kietzke Lane
9  SecondFloor                                      Suite 200
Reno, Nevada  89511                              Reno, Nevada  89511
10  (775) 327-3000; 786-6179 - FAX                  (775) 829-1222; 829-1226 - FAX
E-mail:  speek@halelane.com                     e-Mail:  mgunderson@gundersonlaw.com
11  E-mail:  jsnyder@halelane.com                   e-Mail:  creichenberg@gundersonlaw.com
E-mail:  alang@halelane.com                     and poneill@gundersonlaw.com
12  Attorneys for Plaintff/Counterdefendants
Friendly Capital Partners, L.P., eTreppid
13  Technologies, LLC and Warren Trepp

14
☒    **[ELECTRONIC]**  By filing the document(s) electronically with the U.S. District Court and
15      therefore the court's computer system has electronically delivered a copy of the foregoing
document(s) to the persons listed above at their respective email address.
16
I declare under penalty of perjury under the laws of the State of California and the United
17  States of America that the foregoing is true and correct.  Executed on 10/5/2007, at Los Angeles,
California.
18

19

NANCY TORRECILLAS
20

21

22

23

24

25

26

27

28

PROOF OF SERVICE