1

2

3

4                    UNITED STATES DISTRICT COURT

5                          DISTRICT OF NEVADA

6                                    * * *

7   FRIENDLY CAPITAL PARTNERS, L.P.,  )
                                      )
8              Plaintiff,             )
                                      )
9   v.                                )        3:07-CV-00250-PMP-VPC
                                      )
10  BRENDA MONTGOMERY, DENNIS         )        ORDER
    MONTGOMERY, and MONTGOMERY        )
11  FAMILY TRUST,                     )
                                      )
12             Defendants.            )
    _____   )

13

14          Presently before the Court is Friendly Capital Partners, L.P.'s and Warren

15  Trepp's Motion to Dismiss First Amended Counterclaims, or, in the Alternative, for a More

16  Definite Statement (Doc. #46), filed on September 17, 2007.  Brenda Montgomery, Dennis

17  Montgomery, and the Montgomery Family Trust ("Montgomery") filed an Opposition

18  (Doc. #50) on October 5, 2007.  Friendly Capital Partners, L.P. and Warren Trepp filed a

19  Reply (Doc. #54) on October 19, 2007.  The Court held a hearing on December 21, 2007.

20  (Mins. of Proceedings [Doc. #63].)

21  **I. BACKGROUND**

22          On January 14, 1999, Friendly Capital Partners, L.P. ("FCP") entered into a

23  promissory note ("1999 Note") and security agreement ("1999 Security Agreement") with

24  Dennis and Brenda Montgomery as trustees for the Montgomery Family Trust.  (Notice of

25  Removal [Doc. #1], Ex. 1, Attachs. A & B.)  The 1999 Note was based on a $180,000 loan

26  from FCP to the Trust at an 8% interest rate.  (Notice of Removal, Ex. 1, Attach. A at 1.)

1   The Trust was to repay the loan plus interest by January 15, 2001.  (Id. at 1-2.)  The 1999

2   Note was secured by Montgomery's 50% interest in Intrepid Technologies, LLC, now

3   known as eTreppid Technologies, LLC ("eTreppid").  (Id. at 2.)  According to

4   Montgomery, he obtained the 1999 Note only because Warren Trepp ("Trepp"),

5   Montgomery's business partner in eTreppid, told Montgomery eTreppid needed operating

6   funds and that Trepp was going to make a capital contribution.  (First Am. Countercl. [Doc.

7   #42, "FAC"] at ¶ 15.)  Montgomery alleges Trepp claimed Trepp would be entitled to an

8   increased ownership interest in eTreppid if Trepp made an additional capital contribution

9   and Montgomery did not.  (Id.)  Montgomery contends Trepp told him that to maintain

10  Montgomery's 50% stock share in eTreppid, Montgomery would have to contribute

11  additional cash as well.  (Id. at ¶ 16.)  According to Montgomery, Trepp knew Montgomery

12  did not have funds to invest and therefore Trepp represented that FCP would advance the

13  $180,000 for, among other things, investment in eTreppid.  (Id. at ¶ 18.)

14          On December 21, 2000, FCP and Montgomery executed a modification of the

15  1999 Note and Security Agreements and increased the loan amount to approximately

16  $600,000, extended the due date for repayment to January 15, 2002, and amended the

17  security to a 33% interest in eTreppid.  (Notice of Removal, Ex. 1, Attach. C.)  FCP

18  thereafter filed a UCC-1 Financing Statement in Nevada reflecting this modification.

19  (Notice of Removal, Ex. 1, Attach. F.)  According to Montgomery, this note also was the

20  result of Trepp informing him that eTreppid needed additional operating funds and that if

21  Montgomery wanted to maintain his 50% ownership interest, he likewise would have to

22  make an additional capital contribution.  (FAC at ¶¶ 20-21.)  Montgomery alleges that in

23  reliance on these representations, Montgomery entered into this second promissory note.

24  (Id. at ¶ 21.)  According to Montgomery, he paid the 1999 Note and the first modification as

25  a result of selling 2% of his eTreppid stock to Trepp's business associates for a total of $1.5

26  million.  (Id. at ¶¶ 23-24.)

1    Montgomery alleges that Trepp's representations regarding the need for further

2    capitalization of eTreppid were false when Trepp made them.  (Id. at ¶ 37.)  According to

3    Montgomery, Trepp did not deposit with eTreppid either the initial capital Trepp

4    contractually was required to invest in eTreppid, or the additional capital contributions from

5    himself and Montgomery, but instead used eTreppid funds for his own personal use.  (Id. at

6    ¶¶ 19, 22, 25-30.)

7    On December 29, 2005, FCP alleges it and Montgomery entered into another

8    modification which increased the loan amount to $1,379,795.01 and added in accrued but

9    unpaid interest in the amount of $125,211.48, for a total amount owed of $1,505,006.49.

10   (Compl., Ex. E.)  The maturity date also was revised to demand by FCP or December 31,

11   2007 if FCP made no demand prior to that date.  (Id.)  Additionally, Dennis and Brenda

12   Montgomery personally guaranteed the loan.  (Id.)

13   According to FCP, it made written demand on Montgomery on August 4, 2006,

14   but Montgomery has refused to repay the borrowed funds.  FCP brought this suit in Nevada

15   state court on April 23, 2007.  (Notice of Removal [Doc. #1], Ex. 1.)  Montgomery removed

16   the action to this Court on May 25, 2007, and the action was transferred to the undersigned

17   on October 17, 2007.  (Notice of Removal; Min. Order [Doc. #53].)  Montgomery moved to

18   consolidate this action with other actions pending in this Court between Montgomery and

19   Trepp, but the Court denied the motion.  (Order [Doc. #52]; see 3:06-CV-00056-PMP-VPC

20   & 3:06-CV-00145-PMP-VPC.)  Montgomery's First Amended Counterclaim ("FAC")

21   names as Counterdefendants FCP, Trepp, and eTreppid, and asserts claims for fraud, breach

22   of contract, breach of fiduciary duty, conversion, and unjust enrichment.  (First Am. Compl.

23   [Doc. #42].)  The FAC seeks declaratory relief, compensatory damages, punitive damages,

24   and costs of suit.  (Id.)

25   Counterdefendants FCP and Trepp move to dismiss several of Montgomery's

26   counterclaims, or alternatively they request a more definite statement.  FCP and Trepp

argue Montgomery has failed to plead fraud with particularity and has alleged several claims that are identical to claims pled in other litigation pending before this Court between Montgomery and Trepp. FCP argues Montgomery cannot assert those same claims here, as that is impermissible claim splitting. FCP also argues Montgomery fails to state a claim for conversion because Montgomery alleges Trepp converted eTreppid's funds, not Montgomery's funds. Montgomery responds that he sufficiently has pled fraud, his claims in the two actions are distinct, and he has standing to assert a claim for conversion.

## II. JURISDICTION

The Court initially must address whether it has jurisdiction over this matter. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998). Removal jurisdiction under 28 U.S.C. § 1441(a) gives federal district courts jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Federal district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of different States." 28 U.S.C. § 1332(a). "Section 1332 requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). In removed actions, diversity among the parties must exist at the time the complaint is filed and when removal is effected. Strotek Corp. v. Air Transp. Ass'n of Am., 300 F.3d 1129, 1131-1132 (9th Cir. 2002). However, once diversity jurisdiction exists, it is not destroyed by a party changing its citizenship. Id. at 1132.

FCP filed this action in state court on April 23, 2007. (Notice of Removal [Doc. #1], Ex. 1.) Montgomery removed the action to this Court on May 25, 2007, asserting this Court has diversity jurisdiction. (Notice of Removal.) According to the Complaint, Plaintiff FCP is a California limited partnership. (Notice of Removal [Doc. #1], Compl. at 1.) The Complaint also alleged Defendants Dennis and Brenda Montgomery were Nevada

1  citizens and the Trust was a California trust.  (Id. at 1-2.)  Consequently, as pled the

2  Complaint did not support removal jurisdiction because FCP and the Trust both were

3  alleged to be California residents and because the Complaint alleged the Montgomery's

4  were Nevada residents.  See 28 U.S.C. § 1441(b) (action removable based on diversity

5  jurisdiction "only if none of the parties in interest properly joined and served as defendants

6  is a citizen of the State in which such action is brought.").  In the Notice of Removal,

7  Defendants asserted Dennis and Brenda Montgomery were Washington citizens and the

8  Trust was a Washington Trust.  (Notice of Removal at 1.)  If true, complete diversity would

9  have existed, because no Defendant would have been a resident of the same state as

10  Plaintiff FCP, and no Defendant would have been a Nevada citizen.  However, just a few

11  months later in the FAC, dated August 20, 2007, Defendants alleged Dennis and Brenda

12  Montgomery were Washington citizens but the Trust was a California trust.  (First Am.

13  Countercl. [Doc. #42] at 2.)

14        This change in the citizenship allegation led the Court to question its own

15  jurisdiction in this matter, particularly with respect to whether the Trust was actually a

16  California citizen rather than a Washington citizen, and when the Trust changed citizenship

17  with respect to the critical dates regarding the filing of the original Complaint and removal

18  in this action.  At the December 21, 2007 hearing, the Court requested the parties submit

19  supplemental briefing on the jurisdictional issue.  In response to the Court's request,

20  Montgomery filed a supplemental brief which included the declaration of Dennis

21  Montgomery.  In his declaration, Dennis Montgomery states he and his wife Brenda are the

22  Trust's only trustees.  (Supplemental Br. [Doc. #66], Decl. of Dennis Montgomery at 1.)

23  Dennis Montgomery avers that he and his wife were Nevada citizens from November 1999

24  to September 2006, at which time they moved to Washington.  (Id.)  Dennis Montgomery

25  further declares that he and his wife moved to California in October 2007.  (Id.)  FCP

26  responds that it has no information to contradict Dennis Montgomery's statements

5

regarding the Montgomery's domicile.[1]  The parties agree the Trust's citizenship is determined by the citizenship of its trustees, Dennis and Brenda Montgomery.  See Navarro Savings Ass'n v. Lee, 446 U.S. 458, 464-66 (1980); May Dep't Stores Co. v. Federal Ins. Co., 305 F.3d 597, 599 (7th Cir. 2002).

According to Dennis Montgomery's declaration, the only evidence presently before this Court, Dennis and Brenda Montgomery, and therefore the Montgomery Family Trust, were Washington citizens at the time FCP filed the original Complaint and at the time of removal.  Consequently, this Court has diversity jurisdiction over this case, regardless of the fact that the Montgomery's and the Trust changed citizenship a few months later.  The Court therefore will assume jurisdiction over this matter unless and until other evidence is presented to the Court suggesting diversity jurisdiction did not exist as represented.

## III.  MOTION TO DISMISS/FOR MORE DEFINITE STATEMENT

### A.  Fraud (count one)

FCP moves to dismiss Montgomery's fraud claim for failure to plead fraud with particularity under Federal Rule of Civil Procedure 9(b).  FCP argues the FAC fails to plead fraud with particularity because it does not specify particular details of Trepp's alleged

---

[1] The Court notes that the FAC's allegation regarding the Trust's citizenship at the time the Montgomery's filed the FAC is inconsistent with Dennis Montgomery's declaration.  The FAC was filed in August 2007 and alleged the Trust was a California trust.  However, Dennis Montgomery avers he and his wife did not move to California until October 2007.  Perhaps the FAC meant to allege the Trust was created under California law but is a Washington citizen by virtue of Dennis and Brenda Montgomery's citizenship.  However, the pleading as it stands appears to allege the Trust is a California citizen.  Additionally, Dennis Montgomery's current affidavit does not match allegations regarding citizenship made in another action.  (See Request for Judicial Notice in Support of the Montgomery Parties' Emergency Ex Parte Application for Clarification of Order Re Mot. to Withdraw by Michael J. Flynn [3:06-CV-00056-PMP-VPC, Doc. #275, Ex. 1] (alleging on August 3, 2007 that Brenda and Dennis Montgomery were Washington citizens, that "prior to November 5, 2006, plaintiffs were residents of the State of California" and the Trust was "organized and existing under the laws of the State of California.").

misrepresentations or identify specific statements Trepp allegedly made.  FCP also asserts

Montgomery fails to plead detrimental reliance or link reliance on the alleged

misrepresentation to the notes.  Alternatively, FCP contends that even if the claim is pled

properly, Montgomery raised this same fraud claim in another action in this Court between

Montgomery and Trepp, and he cannot split his claim between the two actions.

Montgomery responds his fraud claim is pled with sufficient particularity, as it

identifies the relevant time period, who made the representations, the content of those

representations, that Montgomery detrimentally relied on the representations, and why those

representations were false.  As to the claim splitting issue, Montgomery argues this case

involves FCP and Trepp's fraud which induced Montgomery to sign the notes and security

agreements, whereas the other case involves fraud and misappropriation of copyrighted

software, which Montgomery alleges is not an eTreppid asset.

### 1. Pleading with Particularity

Federal Rule of Civil Procedure 9(b) requires a plaintiff alleging fraud to state

with particularity in the complaint the circumstances constituting fraud.  Fed. R. Civ. P.

9(b).  To satisfy this burden, the complaint "'must set forth more than the neutral facts

necessary to identify the transaction.'"  Yourish v. Cal. Amplifier, 191 F.3d 983, 993 (9th

Cir. 1999) (footnote omitted) (quoting In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th

Cir. 1994) (en banc)).  The United States Court of Appeals for the Ninth Circuit has defined

"neutral facts" to mean the "'time, place, and content of an alleged misrepresentation.'"  Id.

at 993 n.10 (quoting GlenFed, 42 F.3d at 1547-48).  In addition to the neutral facts, a

plaintiff also must explain what is false about a statement and why it is false.  Id. at 993.

"[M]ere conclusory allegations of fraud are insufficient."  Moore v. Kayport Package Exp.,

Inc., 885 F.2d 531, 540 (9th Cir. 1989).

The FAC alleges Trepp falsely told Montgomery eTreppid needed a capital

infusion and falsely told Montgomery that Trepp was going to make a capital contribution.

1   Trepp also allegedly told Montgomery that if Trepp made a capital contribution and
2   Montgomery did not, Trepp would increase his percentage of ownership in eTreppid.
3   Montgomery alleges that in reliance on Trepp's assertions that eTreppid needed operating
4   funds and that Trepp was going to make a capital contribution, Montgomery obtained the
5   two notes to make similar contributions to eTreppid to maintain his 50% ownership interest.
6   Montgomery further alleges that had he known eTreppid in fact did not need operating
7   funds, and that in fact Trepp was not going to invest any funds in eTreppid, and further that
8   Trepp would use Montgomery's funds invested in eTreppid for Trepp's own personal use,
9   Montgomery would not have incurred the liability under the two notes.

10          The FAC adequately describes the content of the alleged misrepresentations and
11  why they are false.  The FAC does not sufficiently allege details regarding the time, place,
12  and manner of the misrepresentations, however.  As to time, the FAC states only that Trepp
13  made these representations  "beginning in or about 1998" for the 1999 Note and "on several
14  occasions between 1999 and 2000" with respect to the first modification to the 1999 Note.
15  (FAC at ¶¶ 36, 20.)  The FAC does not allege the place or the manner of the
16  communications.  No details are given as to whether Trepp made the alleged
17  misrepresentations during face-to-face meetings, telephone conversations, through letters or
18  emails, or where any such representations occurred.  The Court therefore will grant
19  Defendants' motion to dismiss Montgomery's fraud claim for failure to plead fraud with
20  particularity.  The dismissal is without prejudice to plead further details regarding the time,
21  place, and manner of the alleged misrepresentations.  Montgomery must file his amended
22  complaint within thirty days of the date of this Order.

23          2.  Claim Splitting
24          "Plaintiffs generally have no right to maintain two separate actions involving the
25  same subject matter at the same time in the same court and against the same defendant."
26  Adams v. Cal. Dep't of Health Servs., 487 F.3d 684, 688 (9th Cir. 2007) (quotation

omitted).  The rule against such "claim splitting" is designed "'to protect the defendant from being harassed by repetitive actions based on the same claim.'"[2]  <u>Clements v. Airport Auth.</u> <u>of Washoe County</u>, 69 F.3d 321, 328 (9th Cir. 1995) (quoting Restatement (Second) Judgments, § 26 cmt. a).

A suit is duplicative of another suit if the parties, causes of action, and relief sought in the two actions are the same.  <u>Adams</u>, 487 F.3d at 688-89.  Two causes of action are the same if they "are related to the same set of facts and . . . could conveniently be tried together."   <u>Id.</u> at 689 (quotation omitted).  This inquiry is informed by four factors:

> "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."

<u>Id.</u> (quoting <u>Costantini v. Trans World Airlines</u>, 681 F.2d 1199, 1201-02 (9th Cir. 1982)). "The last of these criteria is the most important."  <u>Id.</u> (quotation omitted).

If the Court determines the two actions are duplicative, the Court has a variety of options, including dismissing the later-filed complaint without prejudice, consolidating the two actions, or staying or enjoining proceedings.  <u>Id.</u> at 692.  What action to take lies within the Court's discretion.  <u>Id.</u>  Among the factors the Court should consider in deciding what course of action to take are promoting judicial economy, comprehensively disposing of litigation, protecting the parties from vexatious and expensive litigation, serving the societal interest in bringing an end to disputes, and ensuring the parties have a full and fair opportunity to raise and litigate claims.  <u>Id.</u> at 692-93.

///

The parties in this action and the other pending action, 3:06-CV-00056-PMP-

---

[2]  A plaintiff may split his claims if the defendant consents.  <u>Clements</u>, 69 F.3d at 328.  FCP objects to the claim splitting, so this exception does not apply.

PAL ("the 06-56 case"), are not exactly the same.  Trepp, eTreppid, Dennis and Brenda Montgomery, and the Montgomery Trust are all parties to both actions, but Plaintiff FCP is not a party to the 06-56 case.  However, Montgomery asserts Trepp and FCP are alter egos, and FCP and Trepp argue the two cases are similar enough that the rule against claim splitting should apply.  Consequently, the Court will analyze the issue as if the parties to the two cases are the same.

As to whether the two cases raise the same fraud claim, the most important factor is whether the two suits arise out of the same transactional nucleus of facts.  The First Amended Complaint in the 06-56 case alleges that Trepp "began to dilute Montgomery's share in eTreppid and, used Montgomery's majority interest in eTreppid to obtain favorable treatment for himself as a majority shareholder at the expense of Montgomery."  (First Am. Compl. [Doc. #7 in 3:06-CV-00056-PMP-PAL].)  The First Amended Complaint in 3:06-CV-00056-PMP-PAL asserts a fraud claim against Trepp as follows:

> 46.  At the time of the formation of Intrepid Technologies and the execution by Plaintiffs of the Contribution Agreement, Trepp orally and in writing promised Plaintiffs that Montgomery would be a 50% shareholder in Intrepid Technologies with Trepp.  He further represented that Montgomery would share equally with Trepp in the profits of the company.
> 47.  At the time Trepp made the foregoing representations to Montgomery and the Montgomery Family Trust, Trepp knew them to be false.  Moreover, he made said representations in order to induce Plaintiffs to contribute valuable software compression technology to the company.
> 48.  In reliance on those representations, Montgomery and the Montgomery Family Trust contributed the software compression technology to the company in reliance on Trepp's promise to share the profits therefrom.
> 49.  However, Trepp has failed to share the profits equally and has instead failed to pay equal profits, dividends or royalties.

Both fraud claims thus arise out of the relationship between Trepp, Montgomery, and eTreppid, and Trepp's alleged dilution of Montgomery's interest and Trepp's alleged use of eTreppid funds for himself at Montgomery's expense.  However, the claims are different.  The 06-56 case concerns allegedly fraudulent statements Trepp made at the inception of

Intrepid in September 1998 regarding the parties' alleged respective ownership shares. The 06-56 First Amended Complaint does not allege any fraud associated with the promissory notes or Trepp's representations regarding eTreppid needing capital infusions. The allegations in the FAC presently before the Court involve Trepp's alleged misrepresentations that eTreppid needed additional operating funds even though it did not, thereby inducing Montgomery to incur debt through the notes which Montgomery would not have done had he known the truth about eTreppid's financial situation and Trepp's intention to use the funds for his own personal use.

Although there is some factual overlap, and undoubtedly some of the same evidence would be presented in both cases, it is not clear that if the 06-56 case went to judgment, the rights in that action would impair or destroy prosecution of the FAC's fraud claim. In the two actions, Montgomery alleges different alleged misrepresentations, even if factually they are related. Montgomery is alleging three different fraudulent misrepresentations: 1) that he would remain a 50% owner of eTreppid; 2) that eTreppid needed more money in late 1998; and 3) that eTreppid needed more money in 2000. Each alleged misrepresentation led to different reliance and damages: 1) Montgomery signed the operating agreement and contributed valuable software to eTreppid; 2) Montgomery signed the 1999 Note and incurred debt he otherwise would not have incurred; and 3) Montgomery signed the 2000 modification to the 1999 Note, incurring more debt he otherwise would not have incurred. Each allegation involves infringement of a separate right. The Court therefore concludes Montgomery is not improperly splitting his fraud claim. The Court will deny Defendants' motion to dismiss on this basis.

## B. Breach of Contract - Contribution Agreement (count three)

FCP argues this claim is identical to allegations in the 06-56 case and asserts Montgomery cannot split his claims between this action and the 06-56 case. Montgomery argues the claims are different because the two claims refer to different conduct.

The First Amended Complaint in 06-56 alleges breach of the Contribution Agreement by failing to maintain Montgomery's 50% interest in the company and instead reducing Montgomery's ownership interest.  The FAC here alleges Trepp breached the contract by failing to invest the initial capital contribution as required under the contribution agreement and by failing to invest the money from the two notes into eTreppid.

As with the fraud claim, the breach of contract claims are both similar and different.  They arise out of some of the same nucleus of facts in that they involve the contribution agreement and the parties' disputes regarding ownership in and management of eTreppid.  However, the two claims are different.  The breach of contract claim in the 06-56 case involves the alleged promise of 50% ownership in eTreppid, whereas the FAC here involves Trepp's alleged failure to invest capital in eTreppid as he contractually agreed.  Because the claims allege different breaches of the contract, the Court will not dismiss the FAC's breach of contract claim as duplicative of the breach of contract claim in the 06-56 case.

**C.  Breach of Fiduciary Duty (count four)**

FCP argues this claim is identical to allegations in 06-56 and asserts Montgomery cannot split his claims between the two cases.  Montgomery argues the claims are different because the two claims refer to different conduct.

The First Amended Complaint in 06-56 alleges Trepp owed Montgomery fiduciary duties as a shareholder in eTreppid and Trepp breached those duties by attempting to change the ownership percentage, paying himself an exorbitant salary, deducting improper business expenses, and taking distributions from the company without making similar distributions to Montgomery.  The FAC here alleges that by virtue of his role as officer and managing agent of eTreppid, Trepp owed fiduciary duties to Montgomery.  The FAC alleges Trepp breached these fiduciary duties by failing to capitalize eTreppid properly, using eTreppid's assets for his personal use, failing to deposit funds in eTreppid

from FCP, falsely representing eTreppid's financial condition, and refusing to allow Montgomery to review eTreppid's books and records.

These two claims are substantially similar.  They arise out of a common nucleus of fact regarding Trepp's fiduciary obligations and his alleged mismanagement of eTreppid, including using eTreppid's funds for his own personal use.  Each claim will rely on virtually identical evidence.  In the interest of judicial economy, the Court will grant FCP's motion as to this claim, and will dismiss Montgomery's later-filed breach of fiduciary duty claim in the FAC.

**D.  Conversion (count five)**

FCP makes two arguments regarding the conversion claim.  FCP again argues Montgomery brought this claim in the 06-56 case so it should be dismissed here. Additionally, FCP argues Montgomery fails to state a conversion claim because Montgomery alleges Trepp converted eTreppid's funds, not Montgomery's funds.  FCP argues Montgomery therefore lacks standing to assert a conversion claim.  Montgomery responds that the two conversion claims refer to different acts and property.  Montgomery also contends he has stated a conversion claim because the FAC alleges Montgomery borrowed funds to deposit into eTreppid but Trepp diverted those funds for his own personal use, and those funds were Montgomery's property.  Alternatively, Montgomery argues Nevada law permits a minority shareholder to bring a claim against a majority shareholder in a closely held corporation.  Additionally, Montgomery argues Nevada law permits a minority shareholder in a closely held corporation to bring a direct claim against the majority shareholder when the wrong is to both the stockholder and the corporation.

1.  Claim Splitting

The First Amended Complaint in 06-56 refers to Trepp's alleged conversion of certain software technology.  The FAC here alleges Trepp converted eTreppid capital and funds for his own personal enjoyment.  These are two different claims based on the alleged

13

conversion of different property.  The Court will deny FCP's motion to dismiss the conversion claim based on claim splitting.

### 2.  Failure to State a Claim

In Nevada, conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights."  Wantz v. Redfield, 326 P.2d 413, 414 (Nev. 1958).  Nevada permits "a minority shareholder to file a direct or individual action against another shareholder for wrongs which would normally have to be brought derivatively on behalf of the corporation."  Simon v. Mann, 373 F. Supp. 2d 1196, 1198-99 (D. Nev. 2005).  "The exception is premised on the proposition that in a closely-held corporation, the relatively few shareholders are generally also the parties to the suit, and thus the attendant remedies and policy concerns are distinct from those arising in derivative suits for publicly-held corporations."  Id.  Whether to permit such a claim to proceed lies within the court's discretion.  Id.  Among the factors to consider are whether permitting the individual to recover (1) unfairly exposes the corporation or the defendants to multiple actions, (2) materially prejudices the interests of the corporation's creditors, or (3) interferes with a fair distribution of the recovery among all interested persons.  Id.

In addition, a minority shareholder may bring a direct individual claim pursuant to the special duties a majority shareholder owes to a minority shareholder in a closely-held corporation.  Id.  In such a situation, a minority shareholder may assert an individual cause of action "'when the wrong is both to the stockholder as an individual and to the corporation.'"  Id. (quoting Far West Fed. Bank, S.B. v. Office of Thrift Supervision-Dir., 119 F.3d 1358, 1364 (9th Cir. 1997)).

The FAC alleges Trepp and FCP used eTreppid's capital and assets for their own use and enjoyment by using eTreppid's funds to pay for personal travel and personal services, and to fund personal stock transactions.  (FAC at ¶ 57.)  The FAC also alleges

1    Trepp did not invest into eTreppid the funds Montgomery borrowed from FCP. (Id. at

2    ¶¶ 19, 22.)

3          FCP's argument that Montgomery lacks standing to assert a conversion claim

4    fails with respect to the funds Montgomery borrowed from FCP to invest in eTreppid.

5    Those funds belonged to Montgomery and represent a debt for which Montgomery became

6    liable. Consequently, to the extent Trepp did not use Montgomery's funds for the stated

7    purpose for which Montgomery entrusted the funds to Trepp, he converted Montgomery's

8    property, not eTreppid's. Moreover, if, as Montgomery alleges, Trepp never invested the

9    funds in eTreppid but instead diverted the funds to his own personal use, the funds never

10   became eTreppid's property. Further, eTreppid is a closely held corporation. Montgomery

11   therefore has standing as a minority shareholder in a closely held corporation. The Court

12   will deny FCP's motion to dismiss the FAC's conversion claim.

13                    **E. Unjust Enrichment (count six)**

14         Finally, FCP argues Montgomery fails to state a claim for unjust enrichment

15   because Montgomery does not allege what money or property FCP or Trepp received,

16   alleging only that "it would be inequitable and unjust to allow Trepp and FCP to retain the

17   benefits conferred upon them as a result of their wrongful conduct alleged above." FCP

18   then notes the unjust enrichment claim states only FCP has been unjustly enriched. FCP

19   argues Montgomery does not distinguish between FCP and Trepp, so FCP and Trepp are

20   entitled to a more definite statement at the very least. Montgomery responds that the FAC

21   overall has sufficient factual allegations supporting the unjust enrichment claim.

22   Montgomery also argues that Trepp and FCP are equally liable on the claim because they

23   are alter egos of one another.

24         The FAC's unjust enrichment claim is inartfully pled, listing both FCP and Trepp

25   in the claim's heading, but stating in the factual allegations that only FCP has been enriched

26   unjustly. Additionally, the FAC is not clear as to what benefits Trepp and/or FCP have

unjustly retained.  The Court therefore will grant FCP and Trepp's motion to clarify what benefits Montgomery alleges which parties unjustly retained.

**IV.  CONCLUSION**

IT IS THEREFORE ORDERED that Friendly Capital Partners, L.P.'s and Warren Trepp's Motion to Dismiss First Amended Counterclaims, or, in the Alternative, for a More Definite Statement (Doc. #46) is hereby GRANTED in part and DENIED in part. The motion is granted as to the First Amended Counterclaim's claims for fraud (count one), breach of fiduciary duty (count four), and unjust enrichment (count six).  The motion is denied in all other respects.

IT IS FURTHER ORDERED that Dennis Montgomery, Brenda Montgomery, and the Montgomery Family Trust may file an amended counterclaim within thirty days from the date of this Order to correct pleading deficiencies in their fraud and unjust enrichment claims as identified in this Order.

DATED:   February 13, 2008.

_____
PHILIP M. PRO
United States District Judge