1  Mark H. Gunderson, Esq. (SBN: 2134)
   Catherine A. Reichenberg, Esq. (SBN: 10362)
2  GUNDERSON LAW FIRM
   5345 Kietzke Lane, Suite 200
3  Reno, Nevada 89511
   Telephone:  (775) 829-1222
4  Facsimile:  (775) 829-1226

5  Deborah A. Klar, Esq. (SBN: 124750)
   Teri T. Pham, Esq. (SBN: CA 193383)
6  Tuneen E. Chisolm, Esq. (SBN: CA 211741)
   LINER YANKELEVITZ
7  SUNSHINE & REGENSTREIF LLP
   1100 Glendon Avenue, 14th Floor
8  Los Angeles, California 90024-3503
   Telephone:  (310) 500-3500
9  Facsimile:  (310) 500-3501
   *ADMITTED PRO HAC VICE*
10
   Attorneys for Defendants and Counterclaimants
11 DENNIS MONTGOMERY, BRENDA MONTGOMERY
   and the MONTGOMERY FAMILY TRUST
12

13            **UNITED STATES DISTRICT COURT**

14        **DISTRICT OF NEVADA - RENO COURTHOUSE**

15 FRIENDLY CAPITAL PARTNERS, L.P., a          ) Case No. 3:07-CV-00250-BES-VPC
   California limited partnership,             )
16                                             ) **SECOND AMENDED**
                   Plaintiff,                  ) **COUNTERCLAIM OF DENNIS**
17        vs.                                  ) **MONTGOMERY, BRENDA**
                                               ) **MONTGOMERY, AND THE**
18 DENNIS MONTGOMERY, an individual;           ) **MONTGOMERY FAMILY TRUST**
   BRENDA MONTGOMERY, an individual;           ) **FOR:**
19 MONTGOMERY FAMILY TRUST, a California        )
   trust, and DOES 1 through 10, individually, ) **1. FRAUD**
20                                             ) **2. BREACH OF CONTRACT -STOCK**
                   Defendants.                 ) **MARKET ANALYSIS**
21 _____       ) **3. BREACH OF CONTRACT -**
   DENNIS MONTGOMERY, an individual;           ) **CONTRIBUTION AGREEMENTS**
22 BRENDA MONTGOMERY, an individual; and       ) **4. BREACH OF FIDUCIARY DUTY**
   THE MONTGOMERY FAMILY TRUST, a              ) **5. CONVERSION**
23 California trust,                           ) **6. UNJUST ENRICHMENT**
                                               ) **7. DECLARATORY RELIEF**
24                 Counterclaimants,           )
          vs.                                  )
25                                             )
   FRIENDLY CAPITAL PARTNERS, L.P., a          ) **DEMAND FOR JURY TRIAL**
26 California limited partnership; WARREN TREPP, )
   an individual; eTREPPID TECHNOLOGIES, LLC, )
27 a Nevada LLC and ROES 1 through 15, inclusive, )
                                               )
28                 Counterdefendants.          )
   _____       )

Counterclaimants Dennis Montgomery, Brenda Montgomery and the Montgomery Family Trust, (hereinafter "Counterclaimants") hereby allege as follows:

**PARTIES**

1.      Counterclaimant Dennis Montgomery ("Montgomery") is an individual and a resident of the State of Washington.

2.      Counterclaimant Brenda Montgomery is an individual and a resident of the State of Washington.

3.      Counterclaimant the Montgomery Family Trust (the "Trust") is a California trust. Brenda Montgomery and Dennis Montgomery are trustees of the Trust.

4.      Counterclaimants are informed and believe and thereon allege that Counterdefendant Friendly Capital Partners, L.P. ("FCP") is a California limited partnership.

5.      Counterclaimants are informed and believe and thereon allege that Counterdefendant eTreppid Technologies, LLC ("eTreppid") is a limited liability company organized and existing under the laws of the State of Nevada with its principle place of business in Nevada.  eTreppid was formerly known as Intrepid Technologies, LLC.

6.      Counterclaimants are informed and believe and thereon allege that Counterdefendant Warren Trepp ("Trepp") is an individual and a resident of the State of Nevada. At all relevant times, Trepp was and is an officer and managing member of eTreppid, and was and is a principal of FCP.

7.      Counterclaimants are informed and believe and on that basis allege that there exists, and at all times herein mentioned has existed, a unity of interest and ownership between Trepp and FCP such that any individuality and separateness between Trepp and FCP ceased and FCP is the alter ego of Trepp in that he has controlled and dominated FCP's affairs and treated FCP's assets as if they were his personal assets.  Adherence to the fiction of the separate existence of FCP as an entity distinct from Trepp would promote injustice.

8.      Counterclaimants are ignorant of the true names and capacities of the counterdefendants sued herein as Roes 1 through 15, inclusive, and therefore sues those defendants

2

1   by such fictitious names.  Counterclaimants will amend this counterclaim to allege these

2   counterdefendants' true names and capacities when the same have been ascertained.

3       9.      Counterclaimants are informed and believe, and thereupon alleges, that Roes 1

4   through 15, inclusive, are responsible in some manner for the injuries and damages herein alleged,

5   and that each are, and at all material times were, the agents and/or alter egos of the other

6   counterdefendants.  In doing the things herein alleged, or in failing to act as herein alleged, all of

7   the counterdefendants acted as the agents of one another, for their mutual and inseparable benefit.

8   **GENERAL ALLEGATIONS COMMON TO ALL COUNTERCLAIMS**

9       **A.      The Contribution Agreement**

10      10.     Counterclaimant Montgomery is a computer scientist, inventor, and software

11  developer.

12      11.     In or around September 1998, Montgomery and Trepp formed Counterdefendant

13  eTreppid.

14      12.     Pursuant to a Contribution Agreement dated September 28, 1998 (the "Contribution

15  Agreement") in exchange for a fifty percent (50%) interest in eTreppid, the Trust contributed

16  certain data compression technology owned by the Trust that is identified in paragraph 1.2.1 of the

17  Contribution Agreement.

18      13.     Pursuant to  eTreppid's Operating Agreement dated September 28, 1998 (the

19  "Operating Agreement"), Trepp and FCP were required to cause a total capital contribution of $1.3

20  million in cash to be made to eTreppid.

21      **B.      The Promissory Note**

22      14.     At times between early June 1999 and, approximately, the end of August 1999,

23  Trepp orally represented to Montgomery as follows.  eTreppid required additional working capital

24  beyond the $1.3 million that Trepp and FCP were required to cause to be contributed to eTreppid

25  under the Operating Agreement.  In order for the Trust to maintain a 50% ownership interest in

26  eTreppid, the Trust would have to fund 50% of the capital that Trepp claimed was needed by

27  eTreppid.  If the Trust could not contribute cash to eTreppid but wanted to maintain its 50%

28  interest, Trepp would cause FCP to contribute to eTreppid the Trust's share of the capital

3

1  purportedly required by eTreppid and FCP's contribution of such funds to eTreppid on the Trust's

2  behalf would be treated as a loan by FCP to the Trust.  Trepp made these representations to

3  Montgomery at Trepp's home in Incline Village, Nevada and at Trepp's office in Incline Village,

4  Nevada.

5        15.    In reliance on Trepp's representations, Dennis Montgomery and Brenda

6  Montgomery, on behalf of the Trust, signed a promissory note dated January 14, 1999 in favor of

7  FCP allowing the Trust to borrow up to $180,000 (the "Promissory Note").

8          **C.**     **The Modification of the Promissory Note**

9        16.    On several occasions in 2000, including, specifically, in approximately January

10  2000, Trepp orally represented to Montgomery that eTreppid needed a further infusion of capital

11  and that the Trust, once again, had to contribute 50% percent of the amount purportedly needed by

12  eTreppid in order to maintain its 50% ownership interest.  Trepp further represented to

13  Montgomery orally and at these times that in order to maintain the Trust's 50% ownership interest

14  in eTreppid, he would cause FCP to contribute to eTreppid the Trust's share of the capital

15  purportedly needed and that these funds would be added to the amount of FCP's outstanding loan

16  to the Trust.  Trepp made these representations to Montgomery at Trepp's home in Incline Village,

17  Nevada, and at Trepp's office in Incline Village, Nevada.

18        17.    In reliance on Trepp's representations, Dennis Montgomery and Brenda

19  Montgomery, on behalf of the Trust, signed an Agreement and Modification of Promissory Note

20  and Security Agreement effective December 21, 2000 (the "Modification").  The Modification,

21  among other things, increased the amount that the Trust could borrow under the Promissory Note to

22  the aggregate maximum principal amount of $600,000.

23        18.    Based on Trepp's representations to Montgomery alleged above, Trepp and FCP had

24  an obligation to Montgomery and the Trust to cause any funds deemed to have been borrowed by

25  the Trust from FCP under the Promissory Note and the Modification for the purpose of funding the

26  Trust's share of capital contributions purportedly required by eTreppid to be actually contributed

27  by FCP to eTreppid.

28

4

**D.    Repayment of the Promissory Note and Modification**

19.    Pursuant to the Promissory Note and the Modification, the Trust purportedly borrowed a total of $629,000 from FCP, a substantial portion of which supposedly represented funds contributed by FCP to eTreppid on behalf of the Trust to fund the Trust's purported share of capital contributions required by eTreppid.  Under the Promissory Note and Modification, this amount was due and payable in full on January 15, 2002.

20.    Knowing that the Counterclaimants did not have monies to repay the amount purportedly due under the Promissory Note and the Modification, in or about November 2001, Trepp induced the Counterclaimants to sell a 2% ownership interest in eTreppid to Trepp's business associates in order to repay the amount purportedly outstanding.

**E.    FCP's Failure to Make Required Capital Contributions**

21.    Counterclaimants are informed and believe and thereupon allege that Trepp and FCP failed to cause a total capital contribution of $1.3 million to be made to eTreppid as required under the Operating Agreement.

22.    Counterclaimants are further informed and believe and on that basis allege that FCP never, in fact, contributed to eTreppid the funds that FCP purported to loan to the Trust under the Promissory note and the Modification in order to fund the Trust's share of capital contributions purportedly required by eTreppid.

**F.    Trepp's Misuse of eTreppid Funds and Assets**

23.    Counterclaimants are informed and believe and thereupon allege that Trepp diverted and misappropriated funds belonging to eTreppid including, but not limited to at least $1 million to cover costs associated with Trepp's charter of a G3 aircraft from Trans-Exec Air Service, at least $56,000 to pay the monthly rent for an apartment leased by Trepp's long-term bookkeeper, Su Perez, and at least $825,000 to pay inflated rent for a property owned by Trepp which Trepp caused to be eTreppid's principal place of business.

24.    In or around mid-2005, Trepp represented to Montgomery that he intended to buy a small brokerage house which he could control.  Counterclaimants are informed and believe, and

5

1   thereupon allege that, around this time, Trepp purchased or invested in a hedge fund known as

2   Ascentia Capital located in Reno, Nevada.

3        25.    Counterclaimants are informed and believe, and thereupon allege that, in or around

4   mid-2005, Trepp transferred at least $1 million out of eTreppid into FCP, and, later, into Ascentia

5   Capital for the purpose of making stock trades to benefit himself personally.

6        26.    At around this same time, Trepp represented to Montgomery that he intended to

7   create a new limited liability company and to open bank accounts in Zurich, Switzerland to

8   facilitate his stock trades.  Counterclaimants are informed and believe and thereupon allege that

9   Trepp transferred significant sums of money from eTreppid to an account in Zurich, Switzerland

10  for such stock trading.

11       **G.    The Predictive Stock Market Software Contract**

12       27.    In or about 2002, Trepp and FCP agreed to pay Montgomery $10 million to develop

13  software capable of forecasting, with 75% accuracy, the direction of the stock market within a two

14  week period (the "System").  That agreement was subsequently confirmed in writing.

15       28.    By December 2005, Montgomery had developed the System and it met the criteria

16  established by the parties.

17       29.    Trepp represented to Montgomery that he and FCP would pay Montgomery the $10

18  million agreed price for the System in January 2006.

19       30.    To date, however, Trepp and FCP have failed to pay Dennis Montgomery the $10

20  million it owes him for the developing the System.

21                          **FIRST CLAIM FOR RELIEF**

22               **(Fraud And Misrepresentation Against Trepp, FCP and ROES 1-15)**

23       31.    Counterclaimants reallege the allegations contained in paragraphs 1-30 as though

24  fully set forth herein.

25       32.    Trepp's above-alleged representations to Montgomery that he would cause FCP to

26  contribute funds to eTreppid on behalf of the Trust in order to fund the Trust's share of capital

27  purportedly required by eTreppid and that such contributions would be treated as loans by FCP to

28  the Trust were, in fact, false.  When he made these representations, Trepp sought to establish the

                                      6

1 apparent existence of loans by FCP to the Trust made for the ostensible purpose of funding the

2 Trust's share of capital contributions required by eTreppid but Trepp did not intend to cause FCP

3 actually to contribute to eTreppid the amounts that the Trust would appear to be borrowing from

4 FCP for that purpose.

5      33.     When Trepp made these representations, he knew them to be false and made these

6 representations with the intention to deceive and defraud the Counterclaimants to act in reliance on

7 these representations, or with the expectation that they would so act.

8      34.     At the time Trepp made these representations and at the time Counterclaimants took

9 the actions herein alleged, they were ignorant of the falsity of Trepp's representations and believed

10 them to be true.  In reliance upon these representations, Counterclaimants were induced to and did

11 execute and thereafter repaid the Promissory Note and the Modification on behalf of the Trust, and

12 did sell a portion of the Trust's ownership interest in eTreppid to others.  Had Counterclaimants

13 known of the actual facts, they would not have taken such actions.

14      35.     As a direct and proximate result of Trepp's and FCP's fraudulent conduct,

15 Counterclaimants have been damaged in an amount to be determined at trial, but in excess of

16 $3,400,000.

17      36.     Trepp's and FCP's aforementioned conduct was an intentional misrepresentation,

18 deceit, or concealment of a material fact known to them with the intention of depriving the

19 Counterclaimants of property or legal rights or otherwise causing injury, and was despicable

20 conduct that subjected the Counterclaimants to a cruel and unjust hardship in conscious disregard

21 of their rights, so as to justify an award of exemplary and punitive damages.

22 **SECOND CLAIM FOR RELIEF**

23 **(Breach of Contract (Stock Market Software Contract) Against Trepp, FCP and ROES 1-15)**

24      37.     Counterclaimants reallege the allegations contained in paragraphs 1-36 as though

25 fully set forth herein.

26      38.     As alleged above, Trepp, on behalf of FCP, and Dennis Montgomery entered into an

27 agreement confirmed in writing under which Montgomery agreed to develop the "System in

28 exchange for payment of $10 million.

1    39.    Montgomery successfully developed and delivered the System to FCP in December

2    2005, and has performed all of his obligations under the parties' agreement.

3    40.    FCP has failed to perform its obligations under the agreement by failing and

4    refusing to pay to Montgomery the $10 million promised to him for the successful creation of the

5    System.

6    41.    As a result of FCP's breach, Montgomery has been damaged in an amount to be

7    determined at trial, but in excess of $10,000,000, plus available interest.

8    **THIRD CLAIM FOR RELIEF**

9    **(Breach of Contract (Agreements to Contribute Funds to eTreppid) against FCP, Trepp and**

10    **ROES 1-15)**

11    42.    Counterclaimants reallege the allegations contained in paragraphs 1-41 as though

12    fully set forth herein.

13    43.    As alleged above, Trepp and FCP were obligated to cause a total capital contribution

14    of $1.3 million to be made to eTreppid under the Operating Agreement.  Trepp and FCP were

15    further obligated, based on Trepp's representations to Montgomery, to cause any funds deemed to

16    have been borrowed by the Trust from FCP under the Promissory Note and the Modification for the

17    purpose of funding the Trust's share of any capital contribution purportedly required by eTreppid,

18    actually to be contributed by FCP to eTreppid.

19    44.    Counterclaimants have fully performed all of their obligations under the

20    Contribution Agreement, the Operating Agreement, and the Promissory Note and Modification,

21    except as excused or prevented by counterdefendants.

22    45.    As set forth above, counterdefendants have failed and refused to perform their

23    obligations by, among other things:

24    (a)    failing to contribute the $1.3 million in capital required under the Operating

25    Agreement; and

26    (b)    failing to cause FCP actually to contribute to eTreppid the funds that the

27    Trust ostensibly borrowed from FCP under the Promissory Note and the Modification for the

28    purpose of funding its share of capital contributions purportedly required by eTreppid.

8

46.     As a result of this breach, Counterclaimants have been damaged in an amount to be determined at trial, but in excess of $1,900,000, plus available interest.

**FOURTH CLAIM FOR RELIEF**

**(Breach of Fiduciary Duty Against Trepp and ROES 1-15)**

47.     Counterclaimants reallege the allegations contained in paragraphs 1-46 as though fully set forth herein.

48.     By virtue of his role as an officer and managing agent of eTreppid, Trepp owed fiduciary duties to the Counterclaimants.

49.     Trepp breached his fiduciary duties to the Counterclaimants by, among other things:

(a)     Failing to properly capitalize eTreppid;

(b)     Using eTreppid's capital and assets for his own personal use and enjoyment;

(c)     Failing to deposit monies from FCP into eTreppid;

(d)     Falsely representing the financial condition and needs of eTreppid; and

(e)     Refusing to allow Counterclaimants to review the books and records of eTreppid.

50.     As a direct and proximate result of Trepp's breaches of his fiduciary duty, the counterclaimants have been damaged in an amount to be determined at trial, but in excess of $3,400,000.

51.     Trepp committed these acts with fraud, oppression and malice, in that he engaged in despicable conduct carried out with a willful and conscious disregard for the rights of the counterclaimants and others and in that he intended with his conduct to cause harm to the counterclaimants so as to enrich himself or otherwise cause injury to the counterclaimants.  The counterclaimants are accordingly entitled to an assessment of punitive damages in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**

**(Conversion Against Trepp, FCP and ROES 1-15)**

52.     Counterclaimants reallege the allegations contained in paragraphs 1-51 as though fully set forth herein.

53.     Trepp and FCP used eTreppid's capital and assets for their own use and enjoyment by, among other things:

(a)     Using eTreppid's funds to pay for personal travel on private jets for Trepp and for his wife;

(b)     Using eTreppid's funds to pay for the salaries of domestic workers performing work solely for the benefit of Trepp and not eTreppid;

(c)     Using eTreppid's funds to engage in personal stock transactions based on inside information.

54.     Montgomery has demanded that Trepp and FCP cease and desist using eTreppid's funds in this manner.  Notwithstanding these demands, Trepp has continued to use eTreppid's assets for his own personal use and enjoyment.

55.     As a direct and proximate result of these acts, Counterclaimants have been damaged in an amount to be determined at trial, but in excess of $1,000,000.

56.     Trepp and FCP committed these acts with fraud, oppression and malice, in that he engaged in despicable conduct carried out with a willful and conscious disregard for the rights of the Counterclaimants and others and in that they intended with their conduct to cause harm to the Counterclaimants so as to enrich themselves or otherwise cause injury to the Counterclaimants. Counterclaimants are accordingly entitled to an assessment of punitive damages against the Counterdefendants in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

### (Unjust Enrichment Against Trepp, FCP and ROES 1-15)

57.     Counterclaimants reallege the allegations contained in paragraphs 1-56 as though fully set forth herein.

58.     As a consequence of the failure by Trepp and FCP to cause $1.3 million to be contributed to eTreppid as required under the Operating Agreement and the failure by Trepp and FCP to cause FCP to contribute to eTreppid the funds purportedly loaned to the Trust under the Promissory Note and Modification for the purpose of funding the Trust's share of capital contributions purportedly required by eTreppid, Trepp and FCP received a greater equity interest in

10

1   eTreppid than that to which they were entitled based on the actual contributions they made and

2   were thereby unjustly enriched.

3         59.    Trepp and FCP have been further unjustly enriched because they have received the

4   benefits of the System that Montgomery delivered to FCP in December 2005 without ever paying

5   for that System.

6         60.    It would be inequitable and unjust to allow Trepp and FCP to retain a greater equity

7   interest in eTreppid than that to which they were entitled and to retain the System as a result of

8   their wrongful conduct alleged above.

9         61.    Trepp and FCP have been unjustly enriched at the expense of the Counterclaimants

10   and should be required to convey the amount of that unjust enrichment back to the

11   Counterclaimants in an amount to be determined at trial, but in excess of $3,400,000.

12   **SEVENTH CLAIM FOR RELIEF**

13   **(Declaratory Relief Against All Counterdefendants)**

14         62.    Counterclaimants reallege the allegations contained in paragraphs 1-61 as though

15   fully set forth herein.

16         63.    An actual controversy has arisen and now exists between counterclaimants, on the

17   one hand and counterdefendants, on the other, concerning the ownership of eTreppid.

18   Counterclaimants are informed and believe and on that basis allege that Counterdefendants contend

19   that Montgomery and the Trust do not jointly own at least 50% of the total membership interests in

20   eTreppid.  Counterclaimants dispute this assertion.

21         64.    A judicial declaration is necessary and appropriate at this time so that the parties

22   may ascertain their actual rights and interests in eTreppid.

23   **PRAYER**

24        WHEREFORE, Counterclaimants pray judgment as follows:

25   On the First, Fourth and Sixth Counterclaims

26         1.    For compensatory damages in an amount to be determined at trial, but in excess of

27   $3.4 million.

28         2.    For punitive damages for the willful, malicious, intentional conduct alleged herein;

11

1    3.    For costs of this action; and

2    4.    For such other and further relief as the court may deem proper.

3  On the Second Counterclaim

4    1.    For compensatory damages in an amount to be determined at trial, but in excess of

5  $10 million.

6    2.    For costs of this action; and

7    3.    For such other and further relief as the court may deem proper.

8  On the Third Counterclaim

9    1.    For compensatory damages in an amount to be determined at trial, but in excess of

10  $1,900,000.

11    2.    For costs of this action; and

12    3.    For such other and further relief as the court may deem proper.

13  On the Fifth Counterclaim

14    1.    For compensatory damages in an amount to be determined at trial, but in excess of

15  $1,000,000.

16    2.    For punitive damages for the willful, malicious, intentional conduct alleged herein;

17    3.    For costs of this action; and

18    4.    For such other and further relief as the court may deem proper.

19  On the Seventh Counterclaim

20    1.    For a declaratory judgment that the Trust owns at least a 50% interest in eTreppid

21    2.    For costs of this action; and

22    3.    For such other and further relief as the court may deem proper.

23

24

25

26

27

28

1   Dated:  March 28, 2008

2                                                LINER YANKELEVITZ
                                                 SUNSHINE & REGENSTREIF LLP

3

4                                           By:       /s/ Deborah Klar
                                                 Deborah A. Klar
5                                                Teri T. Pham
                                                 Attorneys for Defendants and
6                                                Counterclaimants
                                                 DENNIS MONTGOMERY, BRENDA
7                                                MONTGOMERY and the
                                                 MONTGOMERY FAMILY TRUST
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Counterclaimants hereby demand a trial by jury in this action for any and all triable issues.

Dated:  March 28, 2008                                LINER YANKELEVITZ
                                                       SUNSHINE & REGENSTREIF LLP


                                      By:  ____/s/ Deborah Klar_____
                                            Deborah A. Klar
                                            Teri T. Pham
                                            Attorneys for Defendants and
                                            Counterclaimants
                                            DENNIS MONTGOMERY, BRENDA
                                            MONTGOMERY and the
                                            MONTGOMERY FAMILY TRUST

14

**CERTIFICATE OF SERVICE**

Pursuant to NRCP 5(b), I certify that I am an employee of the LAW OFFICES OF LINER YANKELEVITZ SUNSHINE & REGENSTREIF LLP, and that on **March 28, 2008**, I caused to be served the within document described as **THE MONTGOMERY PARTIES' SECOND AMENDED COUNTERCLAIM OF DENNIS MONTGOMERY, BRENDA MONTGOMERY, AND THE MONTGOMERY FAMILY TRUST** on the interested parties in this action as stated below:

| | |
|---|---|
| J. Stephen Peek, Esq.<br>Jerry M. Snyder, Esq.<br>Adam G. Lang, Esq.<br>Hale Lane Peek Dennison and Howard<br>5441 Kietzke Lane<br>Second Floor<br>Reno, Nevada 89511<br>(775) 327-3000; 786-6179 - FAX<br>E-mail: speek@halelane.com<br>E-mail: jsnyder@halelane.com<br>E-mail: alang@halelane.com<br>Attorneys for Plaintff/Counterdefendants<br>Friendly Capital Partners, L.P., eTreppid<br>Technologies, LLC and Warren Trepp | Mark H. Gunderson, Esq.<br>Catherine A. Reichenberg, Esq.<br>MARK H. GUNDERSON, Ltd., APC<br>5345 Kietzke Lane<br>Suite 200<br>Reno, Nevada 89511<br>(775) 829-1222; 829-1226 - FAX<br>e-Mail: mgunderson@gundersonlaw.com<br>e-Mail: creichenberg@gundersonlaw.com<br>and poneill@gundersonlaw.com |

☒ **[ELECTRONIC]** By filing the document(s) electronically with the U.S. District Court and therefore the court's computer system has electronically delivered a copy of the foregoing document(s) to the persons listed above at their respective email address.

☒ [Federal]   I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on March 28, 2008, at San Francisco, California

| | |
|---|---|
| _____<br>Karen Bauman<br>(Type or print name) | /s/ Karen Bauman<br>_____<br>(Signature) |

0039641/001/ 386805v02